**EMPLOYEES' INDEPENDENT UNION, Plaintiff,**

v.

**WYMAN GORDON COMPANY, Ingalls-Shepard Division, Defendant.**

**No. 69 C 1967.**

United States District Court,
N. D. Illinois, E. D.
June 30, 1970.

Gilbert Feldman, Kleiman, Cornfield & Feldman, Chicago, Ill., for plaintiff.

Winston, Strawn, Smith & Patterson, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

NAPOLI, District Judge.

Plaintiff, Employees' Independent Union, (Union), seeks enforcement of an arbitration award against Wyman-Gordon Company, Ingalls-Shepard Division, (Company). Both sides have moved for judgment on the pleadings.

Prior to October, 1967, the Company and the Union had agreed on a plan for compensating Union members of the Board of Adjustment for the period when the Board was meeting to conduct the Fourth Step grievance procedure. The meetings were held at least once a month at 10:00 a. m. in the Company conference room. On the day of the Fourth Step grievance meeting the Union members of the Board of Adjustment did not work their regular shift whether it was the first, second or third shift. As compensation for the day of the meeting they received six hours of pay from the Company and they received two hours of pay from the Union. If the meeting was of short duration, however, then the Company and the Union each provided four hours of pay. The length of the meetings varied so that on occasion the duration of the meeting was in excess of the number of hours of pay paid by the Company and on occasion the duration was less than the number of hours of pay which the Company provided.

In October, 1967, the Company changed the aforementioned procedure and instituted a scheme whereby the Union members of the Board of Adjustment received pay only for those hours which they were actually in attendance at the Fourth Step meetings. The Union objected to the Company's unilateral change in the compensation method and it brought the issue to arbitration. The arbitrator found that the Company was bound by the prior agreement and that it did not have the right under the contract to make the unilateral change.

The Company has refused to abide by the arbitration decision and the Union has come to this court seeking enforcement of the award. The only issue before this court is the legality of the method of compensation that was in practice prior to October, 1967. If the method is legal than the Company must obey the decision of the arbitrator.

The Company suggests three basic reasons for its position that the

pre-October, 1967 plan was illegal. First, it suggests that the arbitrator misconstrued the contract. The simple response to this contention is that by the terms of the contract the arbitrator's decision is binding. As the United States Supreme Court noted in United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960); "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him * *."

■ Second, the Company contends that the method of compensation in question violates a decree against Wyman-Gordon Company ordering it "to cease and desist from * * * contributing support to * * * any * * * labor organization of its employees." The decree was entered on April 23, 1946, in Wyman-Gordon Co. v. N.L.R.B., 153 F.2d 480 (7 Cir. 1946). That case is distinguishable from the instant case for in that situation the Company was supporting a "Company Union". When that Union was dissolved the plaintiff in this case was formed. There is absolutely no suggestion that the Company is now interfering with or dominating the present Union. Considering all of these factors it is fair to say that the events of 1946 are not relevant to the present inquiry.

Rather this case must be decided on defendant's third claim which is that the pre-1967 fixed pay scheme is a violation of Section 302(a) (1) of the Labor-Management Relations Act. That statute in pertinent part reads as follows:

Section 302

. (a) It shall be unlawful for any employer * * * to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

(1) to any representative of any of his employees who are employed in an industry affecting commerce.

■ In support of its position the defendant cites three cases: United States v. Ryan, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335 (1956); United States v. Ricciardi, 357 F.2d 91 (2nd Cir. 1966); and International Longshoremen's Association, AFL–CIO v. Seatrain, Inc., 326 F.2d 916 (2nd Cir. 1964). All of these cases state that 302(a) (1) is to be broadly construed and that it was intended to prevent more than deliberate wrongdoing. It should be noted however that in Blassie v. Kroger Company, 345 F.2d 58, 67 (8th Cir. 1964), Judge Blackmun observed that the members of Congress who supported the amendment were concerned *inter alia* with corruption of collective bargaining through bribery of employee representatives by employers and with extortion by employee representatives. [Citing, Arroyo v. United States, 359 U.S. 419, 79 S.Ct. 864, 3 L.Ed. 2d 915 (1959)].

Acknowledging that Section 302(a) (1) is concerned with more than conscious wrongdoing, neither the cases nor other provisions of the Labor Management Relations Act are of much help in determining how deep into the inter-relations between companies and unions the Congress intended to inject the federal criminal regulations of Section 302(a) (1). For example United States v. Ryan, *supra*, and United States v. Ricciardi, *supra*, both dealt with bribery of union officials and International Longshoremen's Association v. Seatrain Lines, Inc., *supra*, involved an employer making payments directly to the union in lieu of check-off dues where the employees were laid off. There is no doubt that Congress intended to regulate this type of activity. No cases, however, seem to have passed upon the type of fact situation presented in the instant case. Section 8(a) (2) [1] of the Labor Management

---

1. Section 8
(a) It shall be an unfair labor practice for an employer—

(2) to dominate or interfere with the formulation or administration of any labor organization or contribute finan-

Relations Act provides for representatives of employees conferring with the employer without loss of time or pay. In the Matter of Remington Arms Company, Inc., 62 N.L.R.B. 611, 614 (1945); Conference Report, House Report 510 80th Cong. 45, Vol. 2 C.C.H. Labor Law Reporter ¶ 3555, 64 at 8449. This pronouncement of law, however, is of no help in the instant case for it does not speak to the problem of the imprecision of the flat rate plan of payment employed before 1967.

■ Viewing this case then as a case of first impression, it is the opinion of this court that Congress did not intend to cast the ominous shadow of criminal sanctions over the innocuous agreements that unions and companies must engage in regularly in order to work out minor labor relations and production problems. In this case there is little difference between the Company paying the Union members of the Board of Adjustment for a flat six hours work, (sometimes four hours), and paying them only for those hours actually spent at the monthly Fourth Step grievance meeting. Under the pre-1967 flat rate system it is possible that the company may overpay the employee for a few hours or for that matter the employee may put in a few extra hours without pay. The plan as it existed in practice thus had almost no potential for corrupting the parties to the collective bargaining process. In a more positive vein, however, the plan solved the not insubstantial problem of an employee returning to work in the middle of a shift. When a worker returns to work in the middle of a shift he must replace someone on the production line and this replacement requires a long series of "bumpings" in accordance with a seniority system. It would seem inconceivable that Congress would desire to prevent companies and unions from solving these cumbersome problems where the

potential for corruption in the solution decided upon is virtually nil.

The decision in this case is applicable only to the instant set of facts. Had the opportunity for corruption been present or had other factors indicated an attempt to dominate the Union or had any number of other possible factors existed in this case the result may have been different.

■ In consonance with the foregoing, it is the opinion of this court that the system of compensation employed by the company to pay Union members of the Board of Adjustment for attendance at Fourth Step grievance meetings was not illegal. Accordingly, judgment on the pleadings is entered in favor of the Union and the Company is ordered to abide by the decision of the arbitrator.

---

cial or other support to it: *Provided, That * * * an employer shall not be prohibited from permitting employees*

to confer with him during working hours without loss of time or pay. (emphasis added)