BOATLAND, INC. and Robert L. Moore,
Plaintiffs-Appellants,

v.

BRUNSWICK CORPORATION,
Defendant-Appellee.

No. 76–1386.

United States Court of Appeals,
Sixth Circuit.

Argued April 18, 1977.

Decided and Filed July 25, 1977.

Rehearing Denied Aug. 22, 1977.

Gareth S. Aden, Nashville, Tenn., Charles J. Williams, Madison, Tenn., for plaintiffs-appellants.

Frank Gorrell, James W. Berry, Jr., and James O. Bass, Jr., Nashville, Tenn., for defendant-appellee.

Before WEICK, EDWARDS and CELEBREZZE, Circuit Judges.

WEICK, Circuit Judge.

Boatland and Moore have appealed from an interlocutory order of the District Court, certified pursuant to 28 U.S.C. § 1292(b), granting partial summary judgment in favor of Brunswick. The sole issue in the appeal is whether or not the Wisconsin Fair Dealership Law, Wis.Stat.Ann. §§ 135.01 *et seq.*, applies to Boatland's outboard motor dealership contract with Brunswick. The District Court held that the statute was inapplicable. We disagree and reverse.

Moore is the President of Boatland, Inc., a Tennessee Corporation. The corporation has its place of business in Nashville, Tennessee, and sells both inboard and outboard boats, outboard motors, and other boating accessories. In 1965 Moore became a Mercury Marine Outboard motor dealer. In 1971 his corporation, Boatland, took over his dealership, and ever since has been a Mercury dealer. Mercury Marine is a division of the Brunswick Corporation, a Delaware Corporation. Mercury has its principal offices and a factory in Fond du Lac, Wisconsin.

Brunswick and the plaintiffs have had an unbroken sequence of one-year marine engine dealership contracts since 1965. On September 1, 1974 Brunswick and Boatland renewed their annual dealership contract, termed "Direct Sales Contract," which made Boatland a Mercury dealer. The contract had been drawn by Brunswick and is nothing more than a printed form contract, the more pertinent provisions of which are set forth in the footnote.[1]

On August 11, 1975 Brunswick mailed to Boatland a letter notifying it that the Mercury outboard motor dealership contract would not be renewed for model year 1976.

On August 20, 1975 Boatland's legal counsel replied by letter and requested that Brunswick reconsider its decision terminating Boatland's Mercury dealership, or face legal action. Brunswick acknowledged receipt of the letter five days later but gave no satisfactory response.

On August 29, 1975 Boatland and Moore filed suit against Brunswick for injunction and other relief in the Federal District Court for the Middle District of Tennessee, Nashville Division, alleging among other things Brunswick's violation of the provisions of the Wisconsin Fair Dealership Law. Jurisdiction was based on diversity of citizenship. A temporary restraining order was entered by the District Court the same day, enjoining the violation of the dealership contract.

Subsequently the District Court heard and denied plaintiffs' application for a preliminary injunction.

Plaintiffs then filed a motion for summary judgment. They alleged that the Wisconsin Fair Dealership Law determined the rights and remedies of the parties and that it was not complied with by Brunswick. Brunswick countered on December 12, 1975 by filing a cross-motion for partial summary judgment alleging among other things

1. AGREEMENT entered into at Fond du Lac, Wisconsin, this 1st day of September, 1974, between Brunswick Corporation, a Delaware Corporation, through its Mercury Division . . . and Boatland . . . .

Section I

3. Pricing

c) All shipments shall be made F.O.B. Seller's factory at Fond du Lac, Wisconsin.

Section III

3. Nature of Contract.
a) Under no circumstances shall the Dealer, its agents or employees be deemed to be the agent, employee or representative of Seller. Dealer shall not enter into any contract or commitment in the name of or on behalf of Seller or attempt to bind Seller or represent himself as agent, employee or representative of Seller in any respect whatsoever. The relationship hereunder shall be deemed to be that of buyer and seller with the Dealer purchasing Products for resale under the provisions hereof but for Dealer's own account.

5. Title. Title to Products shall be deemed vested in Dealer upon delivery thereof by Seller to the carrier for shipment to the Dealer. All risk thereafter on Products shall be that of the Dealer; it being provided, however, that Seller reserves all rights to stoppage in transit and to repossess Products notwithstanding delivery to the carrier, until full payment of the purchase price is made by the Dealer therefor.

8. Term—Termination.
a) The term of this contract shall be from the date of signing hereof by Seller until the 31st day of August of the following year, provided, however, that either party hereto may forthwith terminate this contract for cause due to breach hereof and may terminate same without cause at any time upon thirty (30) days written notice given to the other party. . . .

c) Seller shall be under no obligation, either express or implied, to refranchise Dealer upon expiration of this contract or in the event of termination prior to expiration.
d) Neither party hereto shall become liable to the other for loss, damage, expense, or investment of any kind whatsoever incurred on account of or arising, directly or indirectly, because of execution of this contract or in contemplation thereof or because of Seller's failure to refranchise Dealer or because of termination of this contract, all rights and claims of that nature being hereby unconditionally and irrevocably waived by both parties to this contract.
11. Interpretation. This agreement and all of its provisions are to be interpreted and construed according to the laws of the State of Wisconsin. Any provision of this contract which in any wise contravenes or is unenforceable under any law of the nation or the state or states in which this agreement is effective shall be deemed separable and not to be a part of this agreement.

that the Wisconsin statute was inapplicable to the contract in dispute.

The District Court handed down a memorandum opinion and entered a separate order on December 22, 1975 granting Brunswick's motion. The Court held that the Wisconsin Fair Dealership Law did not apply to the dealership contract.

## I

In a diversity case the Federal Court is bound by state substantive law wherever applicable, *Erie R. R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and the conflict of laws of the forum in which the court sits. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), and *Agricultural Serv. Ass'n v. Ferry-Morse Seed Co.*, 551 F.2d 1057, 1063 (6th Cir. 1977). Here the forum state is Tennessee, and clearly the conflict of laws of that state applies.

The District Court in *Moody v. Kirkpatrick*, 234 F.Supp. 537, 540 (M.D.Tenn. 1964) stated:

Tennessee follows the general rule that the validity of a contract and the substantive rights of the parties to it are to be governed by the law which the parties intended. In the absence of a manifestation of contrary intention, the parties are presumed to have contracted pursuant to the laws of the state in which the contract was entered into. *Deaton v. Vise*, 186 Tenn. 364, 210 S.W.2d 665 (1948).

Accord: *Agricultural Serv. Ass'n, Inc. v. Ferry-Morse Seed Co.*, supra and the cases cited therein; *Moody v. Bass*, 357 F.2d 730, 732 (6th Cir. 1966); *American Training Serv. v. Commerce Union Bank*, 415 F.Supp. 1101, 1104 n. 3 (M.D.Tenn.1976); *Hamilton Nat'l Bank of Chattanooga v. Hutcheson*, 357 F.Supp. 114, 116–17 (E.D.Tenn.1973), *aff'd without published opinion, sub nom. Hamilton Nat'l Bank of Chattanooga v. Meadow*, 492 F.2d 1243 (6th Cir. 1974); and *Sloan v. Jones*, 192 Tenn. 400, 407, 241 S.W.2d 506 (1951).

The District Court in *Koehler v. Cummings*, 380 F.Supp. 1294, 1303 (M.D.Tenn. 1974), added:

Indeed, *Moak v. Continental Casualty Co.*, 4 Tenn.App. 287, 292 (1927) states, "The lex loci contractus becomes as much a part of the contract as if specifically incorporated therein, and, in the absence of evidence of contrary intention, the parties must be held to have contemplated the application of that law to the terms of their agreement."

In the present case the most significant contacts between the parties occurred in Wisconsin, rather than in Tennessee. The contract was entered into at Fond du Lac, Wisconsin, the situs of Brunswick's Mercury Marine Division's principal offices. All shipments of the goods under the contract were made from Wisconsin. Title to the shipped goods passed from Brunswick to Boatland in Wisconsin since all shipments were made f.o.b.

The state of Tennessee is nowhere mentioned in the form part of the contract, and the only contacts which the parties had with Tennessee were the location of Boatland's place of business, where the outboard motors were resold and serviced by Boatland, and where Boatland promoted the Mercury product. The evidence clearly indicates that the parties intended Wisconsin law to apply to the contract.

The Wisconsin law as applied to the contract includes the substantive laws of that state in determining the parties' rights and obligations. *American Training Serv. v. Commerce Union Bank*, supra; *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (1973); and *Deaton v. Vise, supra.* Since the Wisconsin Fair Dealership Law is part of the substantive law of Wisconsin it applies on its face to this contract. Brunswick, however, argues that the Interpretation Clause of the contract, which states in part that the contract shall "be interpreted and construed according to the laws of the State of Wisconsin", means only that Wisconsin law was to give "meaning and effect" to the terms of the contract, rather than to be "governed" by the laws of Wisconsin. This is a strained and narrow construction of the language, which we think is

unwarranted. There was no evidence that the parties intended to limit Wisconsin law to the mere interpretation of the terms of the contract. They intended, rather, that the substantive law of Wisconsin should determine their rights and obligations.

■ Furthermore, if the language of the contract is at all ambiguous, it should be construed against the draftsman, Brunswick, and should be read in a more reasonable light. *Southwest Forest Indus., Inc. v. Sharfstein*, 482 F.2d 915, 919 (7th Cir. 1972); *Bouton v. Litton Indus., Inc.*, 423 F.2d 643, 646 (3rd Cir. 1970); and *Tele-Controls, Inc. v. Ford Indus., Inc.*, 388 F.2d 48, 51 (7th Cir. 1967). See also *Lauritzen v. Larsen*, 345 U.S. 571, 588–89, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); *Foreman v. George Foreman Assoc., Ltd.*, 517 F.2d 354, 356 (9th Cir. 1975); and *U. S. Ore Corp. v. Commercial Transp. Corp.*, 369 F.Supp. 792 (E.D.La.1974).

Tennessee conflict of laws presumes that the parties contracted pursuant to the laws of Wisconsin, and Brunswick has failed to rebut this presumption.

## II

The Wisconsin Fair Dealership Law, Wis. Stat.Ann. §§ 135.01 *et seq.* provides in part at § 135.04:

> [A] grantor shall provide a dealer at least 90 days' prior written notice of termination, cancellation, nonrenewal or substantial change in competitive circumstances. The notice shall state all the reasons for termination, cancellation, nonrenewal or substantial change in competitive circumstances and shall provide that the dealer has 60 days in which to rectify any claimed deficiency. If the deficiency is rectified within 60 days the notice shall be void.

This law became effective on April 5, 1974, five months before the contract in question was executed. It is clear from the uncontroverted evidence that Brunswick did not comply with this statute when it terminated the dealership agreement.

Brunswick contends that this statute is not applicable to the contract for two reasons: one, that the Wisconsin State Legislature never intended that this statute have extraterritorial effect and apply to dealers like Boatland doing business outside of the state; and two, that the parties provided their own method for termination of the contract in derogation of the Wisconsin Fair Dealership Law.

There is no evidence that the Wisconsin legislature intended to restrict the territorial application of the statute, or to prevent anyone particularly a Wisconsin resident, from making Wisconsin law applicable to his contract.

■ Since Brunswick, a Wisconsin resident, contracted to have Wisconsin substantive law applied to the contract, it cannot be heard now to complain about the extraterritorial application of the Wisconsin law. The contract was simply a Wisconsin contract. *See Lauritzen v. Larsen, supra.* The parties' intention to apply Wisconsin substantive law to their contract is similar to parties' consent in maritime agreements to jurisdiction in a neutral forum. *See The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). As noted by the Tennessee Supreme Court in *Deaton v. Vise, supra*, 186 Tenn. at 373, 210 S.W.2d at 669, "parties may agree to be bound by the laws of another state when the agreement is made in good faith and the contract is referable thereto . . . ." *See also Consolidated Jewelers, Inc. v. Standard Financial Corp.*, 325 F.2d 31, 34 (6th Cir. 1963), and *Sheerin v. Steele*, 240 F.2d 797, 799 (6th Cir.), *cert. denied*, 353 U.S. 938, 77 S.Ct. 816, 1 L.Ed.2d 760 (1957).[2]

■ Brunswick's argument that the termination clause of the contract precluded the application of the Wisconsin Fair Dealership Law to the contract is without merit. In the Interpretation Clause of the contract the parties provided in part:

---

2. It matters not that the parties may not have been actually aware of the existence of the Wisconsin Fair Dealership Law when they signed the dealership contract. They agreed to be bound by Wisconsin substantive law, of which the Fair Dealership Law is a part.

Any provision of this contract which in any wise contravenes or is unenforceable under any law of the nation of the state or states in which this agreement is effective shall be deemed separable and not to be a part of this agreement.

Clearly the Termination Clause of the contract contravenes the Wisconsin Fair Dealership Law and thus the Termination Clause is severed from the contract.[3] The above-quoted provision of the Interpretation Clause may have been designed to prevent the entire dealership contract from being declared illegal and unenforceable.

■ On grounds of public policy clauses in a contract which violate statutory provisions are nugatory and without legal effect. *Kuhl Motor Co. v. Ford Motor Co.,* 270 Wis. 488, 498, 71 N.W.2d 420 (1955).

In *Hawkins Realty Co. v. Hawkins State Bank,* 205 Wis. 406, 416, 236 N.W. 657, 662 (1931), quoting from 2 Page, Contracts (2d ed.) p. 1163, the Supreme Court of Wisconsin said:

"Contracts are against public policy when they tend to injure the state of the public. 'Public policy is that principle of law which holds that no subject or citizen can lawfully do that which has a tendency to be injurious to the public or against the public good.'"

■ As noted by the Supreme Court of Wisconsin in *Vic Hansen & Sons, Inc. v. Crowley,* 57 Wis.2d 106, 116–17, 203 N.W.2d 728, 734 (1973), "the intent and purpose of the objectives of the legislature must be ascertained" to determine whether a provision in a contract made in violation of a statute is void.

It is recognized that in the negotiation for a dealership contract the parties do not ordinarily stand on an equal footing. The dealership contract, as here, is usually a printed form contract prepared by the manufacturer, containing blank spaces to be filled in, and the dealer is left with the option to take it or leave it.

■ Statutes like the Wisconsin Fair Dealership Law endeavor to equalize the bargaining power between the parties and to promote fair dealing. This is a legitimate exercise of the state's police powers. *Kuhl Motor Co., supra,* 270 Wis. at 494–95, 71 N.W.2d 420.

As noted by the Supreme Court of Wisconsin on the Fair Dealership Law, in *Rossow Oil Co. v. Heiman,* 72 Wis.2d 696, 702, 242 N.W.2d 176, 180, "[i]t is clear that these statutory provisions were enacted for the protection of the interests of the dealer, whose economic livelihood may be imperiled by the dealership grantor, whatever its size."

The manufacturer ought not to be permitted to evade or circumvent such statutory provisions, particularly by the use of contracts such as that in the present case which provide for a different method of termination, and thereby accomplish the result opposite from that which the state legislature intended when it enacted the protective legislation. Thus the Wisconsin Supreme Court, in *Kuhl Motor Co., supra,* referring to Wis.Stat.Ann. § 218.01(3)(a)17 [the motor vehicle dealership law], which is a statutory program similar to the Wisconsin Fair Dealership Law,[4] held that any provision in a contract which violated the statute was against public policy and void. *Id.* 270 Wis. at 498–500, 71 N.W.2d 420.

The state has thus made it crystal clear that the unfair cancellation of a dealer's franchise without provocation and without considering the dealer's equities is against the public policy of this state. (*Id.* at 498, 71 N.W.2d at 425.)

*See also State ex rel. Bldg. Owners & Managers Ass'n of Milwaukee, Inc. v. Adamany,* 64 Wis.2d 280, 291–92, 219 N.W.2d 274 (1974).

---

3. The presence of this provision in the Interpretation Clause is one ground which distinguishes the present case from *Mutual Life Ins. Co. v. Hill,* 193 U.S. 551, 24 S.Ct. 538, 48 L.Ed. 788 (1904).

4. This similarity was recognized by the District Court.

The Wisconsin State Legislature has provided for a program in which termination of dealerships by manufacturers will be based on sound, rational, fair grounds, *i. e.* good cause,[5] and not on the arbitrary whims of the manufacturer. This statutory program lends certainty to the business affairs of dealers and prevents unjust disruptive actions by the grantor-manufacturer. Whether good cause exists for the termination of the contract can be determined only by requiring compliance with the Wisconsin Fair Dealership Law and hearing the evidence.

### III

■ Brunswick further argues that the Dealership Law does not apply to its relationship with Boatland because they have no "community of interest" with each other, a prerequisite for the statute's application. § 135.02(4) defines "community of interest" as "a continuing financial interest between the grantor and grantee in either the dealership business or the marketing of such goods or services." Brunswick claims that once Boatland bought the Mercury outboard motors, Brunswick's financial interest in the operation of Boatland's business ended.

The Wisconsin courts have yet to pass on this provision of the statute, but Brunswick's argument overlooks the Promotion and Service Clauses in the contract.

Both clauses effectively provide for performance standards which Boatland had to maintain in order to comply with with the terms of the contract. By these clauses Brunswick had retained an interest, a "foot in the door", on how Boatland was performing in promotions and services. In fact, Brunswick's branch managers came to the Boatland store numerous times each year to review Boatland's performance and to look at its promotion efforts of their Mercury product. Admittedly, these contract claus-

es did not directly bring in sales profits per se to Brunswick, but they directly related to Brunswick's goodwill in its Mercury product, a financial asset in its balance sheet. Thus, Brunswick continued to have sufficient stake in Boatland's promotions and service operations to be deemed to have had a "continuing financial interest" in the operation of Boatland's business.

### IV

■ Brunswick's other attacks on the Wisconsin Fair Dealership Law are likewise without merit. Brunswick contends that the Fair Dealership Law is unconstitutionally vague because a manufacturer cannot gauge properly its conduct by a "good cause" standard. Section 135.02(6) provides:

> 6) "Good cause" means:
>
> (a) Failure by a dealer to comply substantially with essential and reasonable requirements imposed upon him by the grantor, or sought to be imposed by the grantor, which requirements are not discriminatory as compared with requirements imposed on other similarly situated dealers either by their terms or in the manner of their enforcement; or
>
> (b) Bad faith by the dealer in carrying out the terms of the dealership.

The term "good cause" is properly defined by the statute so as to give Brunswick adequate notice as to when it would be violating the Act. *See Rossow Oil Co. v. Heiman, supra,* 72 Wis.2d at 702, 242 N.W.2d 176.

■ Brunswick also contends that its right to substantive due process, to freedom to contract and to acquire and sell property, would be violated by the application of this statute to a foreign dealer like Boatland. This contention is frivolous. As noted above, the parties in this case voluntarily entered into this Wisconsin contract, and therefore intended to apply Wisconsin sub-

---

**5.** § 135.03 of the Wisconsin Fair Dealership Law provides:

No grantor, directly or through any officer, agent or employee may terminate, cancel, fail to renew or substantially change the competi-

tive circumstances of a dealership agreement entered into after the effective date of this act (1973) without good cause. The burden of proving good cause shall be on the grantor.

stantive law to their contract. Similarly, this statute, as applied in this case, in no way burdens interstate commerce.

Furthermore, Boatland is entitled to equal protection of the same law which applies to dealers located in Wisconsin because its contract was made and entered into in that state and it contains an express provision that Wisconsin law is to be applied.

Moreover, the Wisconsin Fair Dealership Law does not appear to interfere with the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* The Wisconsin statute in its definition of "dealership", § 135.02(2), includes "a contract . . . by which a person is granted the right to sell or distribute goods or services, or use a trade name, trademark, service mark, logotype, advertising or other commercial symbol . . . ." Brunswick argues that this statute interferes with the trademark registrant's federal right to grant a license for a definite term by compelling the license to continue in operation for an indefinite period of time. However, the Wisconsin statute merely regulates the contractual relations between the grantor-manufacturer and the dealer. It does not interfere with Brunswick's registration rights under the Lanham Act.[6]

It follows that the District Court erred in granting partial summary judgment in favor of Brunswick.

The partial summary judgment of the District Court in favor of Brunswick is reversed, and this case is remanded to the District Court for further proceedings not inconsistent with this opinion.

---

6. This Court is in accord with the reasoning and the result reached by District Judge Newell Edenfield in the case of *C. A. May Marine Supply Co. v. Brunswick Corp.*, No. C76–132A (N.D.Ga. June 30, 1976), particularly as it applies to Part IV of this opinion. Judge Edenfield's opinion in the case is unpublished; the case is pending on appeal before the Fifth Circuit. The printed form contract in the *May Marine Supply* case was identical with the contract in the case at bar, and the parties in the present appeal have argued the merits of the *May Marine* decision before us.

It is noteworthy that Judge Edenfield declined to follow the opinion of the District Court rendered in the case at bar.