JACKSON PURCHASE RURAL ELECTRIC COOPERATIVE ASSOCIATION, Plaintiff-Appellee,

v.

LOCAL UNION 816, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Defendant-Appellant.

No. 79–3472.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 5, 1980.

Decided April 24, 1981.

James W. Owens and Tod Douglas Megibow, Owens, Pierce, Graves, Paducah, Ky., for defendant-appellant.

Joseph A. Yocum, Yocum & Hahn, Evansville, Ind., Dandridge F. Walton, Frankfort, Ky., for plaintiff-appellee.

Before BROWN and KENNEDY, Circuit Judges, and SPIEGEL, District Judge.*

CORNELIA G. KENNEDY, Circuit Judge.

Local 816 appeals the order of the District Court setting aside a labor arbitration award in its favor. The facts are undisputed, and the case was decided on cross-motions for summary judgment. The issues on appeal are 1) whether it is a violation of Section 302(a)(1) and (c)(4) of the Labor Management Relations Act, 29 U.S.C. § 186(a)(1) and (c)(4), for an employer to check off, or agree to check off, union dues from employee paychecks without written authorization from the employees where there is no intent to violate federal law, and

---

* Honorable S. Arthur Spiegel, United States District Judge, Southern District of Ohio, sitting by designation.

2) if so, whether a long-continued practice of checking off union dues in violation of those sections may nonetheless be enforced by an arbitrator as part of a collective bargaining agreement. We answer yes to the first question and no to the second, and affirm the judgment of the District Court.

Local 816 is the authorized bargaining representative for Jackson Purchase employees. The written collective bargaining agreement is silent on the issue of checking off union dues, but for 16 years prior to 1978 Jackson Purchase deducted dues from employee paychecks and paid them over to Local 816 without written authorization from the affected employees. Jackson Purchase unilaterally terminated this practice in 1978. Local 816 protested and the matter was submitted to arbitration. The arbitrator found that the practice violated federal law. However, he concluded that the illegality was relevant only between "the federal government and each of the parties separately and should not affect [the] consensual relationship between [employer and union]." As between the parties the arbitrator concluded that the fact that the practice had continued for 16 years created an implied agreement to check off union dues between Jackson Purchase and Local 816, which had become a part of the collective bargaining agreement and was therefore not subject to unilateral termination. He ordered Jackson Purchase to continue to check off union dues upon receipt of proper authorization cards from the employees. The District Court set this arbitration award aside, holding that since the check off violated section 302(a) it could not be enforced.

Section 302(a)(1) of the Labor Management Relations Act, 29 U.S.C. § 186(a)(1), states that

[i]t shall be unlawful for any employer ... to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or any other thing of value to any representative of any of his employees who are em-

ployed in an industry affecting commerce.

Subsection (c)(4) creates an exception

with respect to money deducted from the wages of employees in payment of membership dues in a labor organization: *Provided*, That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective bargaining agreement, whichever occurs sooner. (Emphasis in the statute)

Subsection (d) makes it a misdemeanor willfully to violate the above provisions.

■ Local 816 first argues that because subsection (d) makes it a crime willfully to violate § 302, a willful violation is the only violation that Congress contemplated. Because the District Court found that Jackson Purchase and Local 816 did not *intend* to violate § 302, Local 816 claims that it erred in finding that the Local *did* violate that section. This argument is devoid of merit. The fact that willful violations of § 302 are to be met with a criminal sanction does not render an unwitting violation lawful. Congress need not prescribe a criminal penalty, or any penalty for that matter, to make an action illegal. As noted above, subsection (a) expresses Congress' intent that an agreement to check off union dues without written employee authorization "shall be unlawful." Local 816 has not brought to our attention any legislative history or other evidence that indicates that § 302 does not mean what it so clearly says.[1] Thus, the arbitrator and the United States District Court were correct in holding that the past practice in this case violated federal law.

■ Local 816 next observes that the long-continued practice of checking off union dues necessarily implies an underlying

1. For the general proposition that Section 302 was designed to prevent more than deliberate or willful violations, *see e. g., International Longshoremen's Ass'n v. Seatrain Lines, Inc.,* 326 F.2d 916, 919 (2d Cir. 1964); *Employee's Independent Union v. Wyman Gordon Co.,* 314 F.Supp. 458, 460 (N.D.Ill.1970).

agreement to check off union dues. It argues that although the implementation of the agreement in this case was unlawful, the agreement itself is not, because the agreement does not specify that unlawful means shall be used to accomplish its ends. Thus, Local 816 contends that we should sever the agreement to check off from the manner in which the checking off was accomplished, and enforce only the agreement to check off through the past practice doctrine. The distinction that the Union is making may have merit in the appropriate case, where there is evidence of a lawful agreement which is independent of the illegal act. However, that is not the case here. The only implied agreement that could be said to have become, by long-continued practice, a part of the contract is the agreement to check off without written authorizations from the employees. Such agreement to check off without written authorizations, although not willful and therefore not criminal, is clearly unlawful under the terms of the applicable statute.

■ The next question is what effect, if any, should be given the illegal past practice and past agreement. The *Restatement (Second) of Contracts* § 320(1) (Tent. Draft No. 12, 1977) states the rule that a promise is unenforceable if legislation so provides, or if the interest in enforcement is clearly outweighed by the public policy against enforcement. Generally, one who has himself participated in an illegal act cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction. *Weil v. Neary*, 278 U.S. 160, 174, 49 S.Ct. 144, 149, 73 L.Ed. 243 (1929) (enforcement of an illegal contract is contrary to public policy); *Gibbs and Sterrett Mfg. Co. v. Brucker*, 111 U.S. 597, 601, 4 S.Ct. 572, 574, 28 L.Ed. 534 (1884); *Boatland, Inc. v. Brunswick Corp.*, 558 F.2d 818, 823 (6th Cir. 1977) (on grounds of public policy clauses in a contract which violate statutory provisions are without legal effect); *N.L.R.B. v. Martin Building Material Co.*, 431 F.2d 1246 (5th Cir. 1970) (the court enforced an NLRB order which did not permit an existing collective bargaining agreement to act as a bar to a new repre-

sentation election, where the agreement contained a check off provision that violated § 302(c)(4)); *Botany Industries, Inc. v. New York Joint Board Amalgamated Clothing Workers of America*, 375 F.Supp. 485 (S.D.N.Y.1974), *vacated and dismissed as moot*, 506 F.2d 1246 (2d Cir. 1974) (a court cannot enforce an invalid collective bargaining agreement, either directly through a declaratory judgment action, or indirectly, by enforcement of an arbitration award).

■ However, it is not the case that all unlawful agreements are *ipso facto* void. If the denial of relief is disproportionately inequitable the right to recover will not be denied. 14 *Williston on Contracts* § 1630A (3d ed. 1972). Factors a court should consider in performing this balancing include: the justified expectations of the parties; the forfeiture that would result from non-enforcement of the agreement; any special public interest in enforcement; the strength of the public policy that the agreement violates, as shown by legislation or court decision; the likelihood that refusal to enforce will further that policy; and the seriousness of the misconduct. *Restatement (Second) of Contracts* § 320(1) (Tent. Draft No. 12, 1977).

■ As the authorities cited above make clear, there is a strong presumption that agreements in violation of a statute will not be sanctioned by the courts. That presumption is stronger than usual in this case, as Congress not only made the act of unauthorized checking off of union dues illegal, it also made the agreement to do that act illegal. This is not a case where a party is trying to have an entire contract declared illegal on the basis that a minor provision violates the law, as was the case, for example, in *Alston Studios, Inc. v. Lloyd V. Gress & Associates*, 492 F.2d 279, 285 (4th Cir. 1974). Local 816 is trying to enforce the illegal agreement itself. There is no specific public interest in enforcing this agreement. Rather, the public's interest is promoted by non-enforcement. The public policy advanced by § 302 is to protect employees in dealings between the union and employer. The relief ordered by the arbi-

trator is prospective and there is no contention that any employee was actually injured by this past practice. However, enforcement of an illegal agreement on the ground that the evil concerned did not follow would destroy the safeguards of law and lessen the prevention of abuses. *Weil v. Neary*, 278 U.S. at 174, 49 S.Ct. at 149. Local 816 had no justified expectation that its agreement with Jackson Purchase was lawful, nor was it misled in any way by Jackson Purchase. No forfeiture or unjust enrichment will result to any party if this past practice or agreement is not made a part of future collective bargaining agreements. Although the misconduct in this case was not serious, that factor by itself is entitled to little weight. In short, Local 816 has given us no reason to disregard the presumption that courts will not give legal effect to illegal acts.

■■■ Arbitration of labor disputes is favored. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578–583, 80 S.Ct. 1347, 1350–1353, 4 L.Ed.2d 1409 (1960). Judicial review of an arbitrator's decision is very limited so long as the arbitrator's award is drawn from the collective bargaining agreement. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597–599, 80 S.Ct. 1358, 1361–1362, 4 L.Ed.2d 1424 (1960). An arbitrator may properly incorporate the past practices of the parties or the "common law of the shop" into the written collective bargaining agreement where that document is silent or ambiguous on a matter, *Detroit Coil Co. v. International Ass'n of Machinists & Aerospace Workers, Lodge No. 82*, 594 F.2d 575, 579 (6th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979), but an illegal collective bargaining agreement will not be enforced. *Hairston v. McLean Trucking Co.*, 520 F.2d 226, 235 (4th Cir. 1975); *cf. Chattanooga Mailers Union, Local No. 92 v. Chattanooga News-Free Press Co.*, 524 F.2d 1305 (6th Cir. 1975) (illegality of one clause in a collective bargaining agreement did not render the whole agreement invalid). Because the practice of checking off union dues without written authorization and the implied agreement to check off are illegal, and the Union has not overcome the presumption that illegal acts are without legal effect, the arbitrator exceeded his authority by incorporating the practice or the agreement into the collective bargaining agreement here. The arbitrator's award depended on the illegal past practice, thus was not based on the collective bargaining agreement, and the District Court was correct in setting it aside.

For the foregoing reasons, the order of the District Court is affirmed.

SPIEGEL, District Judge, dissenting.

I respectfully dissent. Because the District Court found no intent to violate the law, and because any violation here of section 302 of the Labor Management Relations Act (LMRA) involved neither corruption nor an attempt by the company to dominate the union, I believe the original agreement to check off may be enforced through the past practice doctrine.

To the facts as set out in the majority opinion, I would add the following: The collective bargaining agreement, in Article IV, contains a union security clause (Record, Ex. A attached to doc. 10). Subsequent to the employer's unilateral termination of the check-off practice in 1978, after the current agreement was executed, the union presented written authorizations which the employer refused to honor.

The District Court set aside the arbitration award because it deemed the *performance* of the agreement to check off to be a violation of federal law. However, the District Court had first determined that the *agreement* itself was lawful because there was no intent to violate section 302.

The issue on appeal, as I see it, is whether a past practice based on a lawful agreement may be enforced by an arbitrator as part of a collective bargaining agreement. I conclude that the check-off practice in this case may be so enforced, so long as written authorizations are submitted, as the arbitrator ordered.

**Discussion**

There is a strong public policy in the United States in favor of settling labor

disputes by arbitration. Thus, the standard of judicial review of an arbitration award is a narrow one, as set out by the Supreme Court in the *Steelworkers* trilogy.[1] The courts are not to weigh the merits of a grievance.[2] The arbitrator's award is to be enforced so long as it draws its essence from the collective bargaining agreement.[3] The arbitrator may incorporate into the written agreement, where the contract is silent or ambiguous on the matter, the past practices of the parties. *Detroit Coil Co. v. International Ass'n of Machinists & Aerospace Workers, Lodge No. 82*, 594 F.2d 575, 579 (6th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979).

While a bargaining agreement is arguably not binding if it is in violation of law, *Hairston v. McLean Trucking Co.*, 520 F.2d 226, 235 (4th Cir. 1975), I do not believe that the agreement here falls under this limitation. The District Court found that there was no intent to violate the statute. The practice of checking off dues was carried out with the implied consent of the employees, even if the consent was not in writing, as the statute literally demands. Clearly, if consent were lacking, the practice would not have continued for 16 years. The collective bargaining agreement does contain a union security clause. A dues check off is a logical corollary to such a clause. Why the dues check off is not contained in the written agreement does not appear in the record. Nevertheless, it may be inferred that the practice was so well-established, over so many years covering several contracts, that the union inadvertently failed to bargain for its inclusion in the written contract.

The purpose of section 302(a) is "to protect employers from extortion and to insure honest, uninfluenced representation of employees." *United Steelworkers v. United States Gypsum*, 492 F.2d 713, 734 (5th Cir.), *cert. denied*, 419 U.S. 998, 95 S.Ct. 312, 42 L.Ed.2d 271 (1974). I cannot say that the agreement to check off dues and its implementation here possessed any characteristics of extortion of the employer or influence of the union's representation of the employees.

An arbitration award should not be vacated unless it orders a violation of law or compels conduct contrary to public policy. *Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post*, 442 F.2d 1234, 1239 (D.C.Cir.1971). The arbitrator in the present case ordered the employer to check off dues prospectively, as written authorizations are received. There is therefore no order compelling a violation of law. Enforcement of the arbitration award in question here will not infringe in any way on rights of management.

Even if the collective bargaining agreement incorporating the check off were considered illegal because originally there were no written authorizations, the illegality of a contract does not automatically render it unenforceable. *California Pacific Bank v. Small Business Administration*, 557 F.2d 218 (9th Cir. 1977); Restatement of Contracts, §§ 598–609 (1932); 6A A. Corbin, Contracts, chs. 79–90 (2d ed. 1962); 14 S. Williston, Contracts, chs. 48–50A (3d ed. 1972); 15 S. Williston, Contracts, chs. 51–52 (3d ed. 1972). "Out of the muddle of common law rules regarding illegality has come the general principle that illegal contracts are unenforceable only where (1) a statute explicitly provides that contracts contravening it are void or (2) where 'the interest in [the contract's] enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms.'" *California Pacific Bank, supra*, at 224, citing Restatement (Second) of Contracts § 320(1) at 53 (Tent. Draft No. 12, March 1, 1977).

The statute in this case, section 302 of the LMRA, does not explicitly provide that contracts contravening it are void. Nor would

1. *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

2. 363 U.S. at 568, 80 S.Ct. at 1346.

3. 363 U.S. at 597, 80 S.Ct. at 1361.

enforcement here be outweighed by public policy against enforcement. In fact, the strong public policy in favor of peaceful settlement of labor disputes by arbitration would be furthered by enforcement of the arbitrator's award.

**The Majority Opinion**

In the majority opinion the Court finds devoid of merit the union's argument that the District Court erred in finding a violation of section 302 after first determining that the parties did not *intend* to violate the section. The majority similarly rejects the union's contention that the agreement to check off should be severed from its implementation and enforced through the past practice doctrine. I find both union arguments meritorious and believe that their summary rejection is contrary to public policy in this case. Whether the act of checking off dues without written authorization was unlawful in light of the statute, it certainly was not a misdemeanor. The District Court found that it was not done willfully with intent to violate the statute, and the majority does not hold this finding clearly erroneous.

The majority argues that the agreement, though not willful and therefore not criminal, is "clearly unlawful" under the terms of section 302. Opinion at 267. They contend that section 302 was designed to prevent more than deliberate or willful violations, citing *International Longshoremen's Ass'n v. Seatrain Lines, Inc.*, 326 F.2d 916, 919 (2d Cir. 1964) and *Employees' Independent Union v. Wyman Gordon Co.*, 314 F.Supp. 458, 460 (N.D.Ill.1970). Opinion at 266, n. 1.

We agree that the statute may cover some situations which do not involve conscious wrongdoing. However, *International Longshoremen's Ass'n v. Seatrain Lines, Inc.*, involved an employer making payments directly to the union in lieu of check-off dues when the employees had been laid off, a situation quite different from the facts of the present case. Moreover, *Employees' Independent Union v. Wyman Gordon Co.* actually supports the proposition that not all technical violations of section 302 are illegal. In that case the company

paid Union members of the Board of Adjustment a flat rate for attending meetings, even though the meetings sometimes lasted for fewer hours than the number of hours covered by the Company's flat rate. This was technically a violation of section 302(a)(1). Nevertheless, the Court held that the action was not illegal. The Court relied upon the facts that little or no opportunity for corruption was present nor was there any indication of an attempt by the company to dominate the Union. 314 F.Supp. at 461. The same would be true in the present case.

It is obvious that an agreement to check off must have existed prior to and separate from its execution. Otherwise, there would be no conceivable reason for the employer to withhold dues and forward them to the union. The District Court's finding of fact that the agreement evidenced no intent to violate the statute must mean that the agreement did not include a decision to check off without written authorization. Thus, it does not follow logically that the agreement to check off, as well as the practice, must be found unenforceable, as the majority holds. I would hold at the very least that the agreement to check off, in and of itself, was perfectly lawful. The fact that the practice continued unopposed for so many years must mean that the agreement to check off also continued. Therefore the agreement to check off can safely be incorporated by implication into the collective bargaining agreement and may be enforced lawfully by the simple expedient of requiring written authorizations to be submitted before dues are checked off again by the employer.

Even assuming that the agreement to check off was unlawful, the majority concedes that not all unlawful agreements are *ipso facto* void and notes that the equities should be balanced before a decision on enforcement is made. Factors to be considered, the majority observes, are "the justified expectations of the parties; the forfeiture that would result from non-enforcement of the agreement; any special public interest in enforcement; the strength of

the public policy that the agreement violates, as shown by legislation or court decision; the likelihood that refusal to enforce will further that policy; and the seriousness of the misconduct." Opinion at 267.

The majority argues that there is no specific public interest in enforcing this agreement and that the public's interest is actually promoted by non-enforcement. With this assessment I strongly disagree. The public policy advanced by section 302 is to protect employers from extortion and to protect employees from overreaching by the union and employer. This agreement to check off, as it has been implemented, has never caused any injury to either the employer or the employees. In fact, as found by the arbitrator, it has been of benefit to the employees, who relied on this method of paying their union dues.

The specific public interest promoted by enforcement of this agreement is threefold: (1) public policy favors the peaceful resolution of labor disputes through arbitration, *Steelworkers* trilogy, *supra*; (2) public policy encourages the practice and procedure of collective bargaining, section 1, National Labor Relations Act, 29 U.S.C. § 151; (3) public policy endorses union security, section 8(a)(3), National Labor Relations Act, 29 U.S.C. § 158(a)(3). Here the arbitrator ordered the employer to resume check off as written authorizations are received; public policy is served by enforcing the arbitrator's award. The parties bargained years ago for the dues check off, and enforcing their agreement promotes the practice of collective bargaining. A union security clause is part of the parties' written agreement; continuation of the check off supplements and complements that clause.

The majority declares that Local 816 did not have a justified expectation that its agreement with Jackson Purchase was lawful, nor was it misled by Jackson Purchase. Arguably, however, the union did have a justified expectation, based on many years' experience, that the employer would continue the check off practice. We have no way of knowing whether the union was misled by the employer. In all probability, had the employer announced its intention with respect to the dues check off at the time of the last collective bargaining negotiations, the union would have bargained for inclusion of the practice in the written agreement.

As to the seriousness of the misconduct, the majority admits that it was not serious but dismisses that conclusion with the remark that it is entitled to little weight. Opinion at 268. I conclude, however, that relatively minor misconduct such as we have here should not be determinative in the face of the strong public policies which have been outlined.

I do not believe that the public interest or the interests of justice are well-served by the majority decision in this case. Accordingly, I would hold that the District Court erred in refusing to enforce the arbitrator's award and would vote to reverse the District Court and to reinstate the arbitration award.