**BASF WYANDOTTE CORPORATION,** Plaintiff,

v.

**LOCAL 227, INTERNATIONAL CHEMICAL WORKERS UNION, AFL–CIO, Joseph LaMountain, President and in his individual capacity, and Roger Scales, Secretary and in his individual capacity, Defendants.**

No. 82–CV–1431.

United States District Court, N.D. New York.

July 2, 1984.

Solotoff & Spivak, Great Neck, N.Y., Henry Kramer, Rensselaer, N.Y., for plaintiff; Joel Spivak, Great Neck, N.Y., of counsel.

Dominick Tocci, Albany, N.Y., for defendants; Laurence Gold, David M. Silberman, A. Richard Feldman, Bredhoff & Kaiser, Washington, D.C., of counsel.

## MEMORANDUM–DECISION and ORDER

MINER, District Judge.

### I

This action involves an alleged violation of the provisions of section 302 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 186. Jurisdiction in this Court is invoked pursuant to the provisions of 28 U.S.C. § 1337. Plaintiff BASF Wyandotte Corporation ("BASF"), an employer within the meaning of 29 U.S.C. § 186, seeks a declaration that certain payments it has contracted to make to representatives of defendant Local 227, International Chemical Workers Union, AFL–CIO ("Union") are prohibited by the proscription found in § 302(a)(2), 29 U.S.C. § 186(a)(2).[1] Defendants LaMountain and Scales are the past president and secretary, respectively, of defendant Union. Before the Court is plaintiff's motion for summary judgment, Fed.R.Civ.P. 56(a).

### II

BASF maintains a chemical manufacturing facility in the City of Rensselaer, New

---

1. 29 U.S.C. § 186(a) provides:

(a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

(1) to any representative of any of his employees who are employed in an industry affecting commerce; or

(2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; or

(3) to any employee or group or committee of employees of such employer employed in an industry affecting commerce in excess of their normal compensation for the purpose of causing such employee or group or committee directly or indirectly to influence any other employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing; or

(4) to any officer or employee of a labor organization engaged in an industry affecting commerce with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees or as such officer or employee of such labor organization.

York. It has operated that plant since April 1, 1978. Defendant Union has been the exclusive bargaining representative of the production and maintenance workers at the plant since the 1940s and has continued in that capacity since the purchase of the plant by BASF. All of the Union's approximately 200 members are employed by BASF at the Rensselaer facility.

The dispute herein concerns a "no-docking" provision in the collective bargaining agreement between these parties. Stated simply, a no-docking provision allows an employee to take time off from work without any loss of pay.

According to the Union, its two primary officers are its president and its secretary. At the time this action was commenced, those positions were held by defendants LaMountain and Scales, respectively. Prior to BASF's acquisition of the Rensselaer facility, these officers were permitted an aggregate of six hours a day, without loss of pay, to attend to union business. In 1978, however, the parties re-negotiated this no-docking term to provide for a maximum aggregate of only four hours a day, and in 1981, this no-docking provision was continued in a subsequent collective bargaining agreement. The no-docking provision is contained in Article II, § 4 of the collective bargaining agreement and provides in part:

> Official representatives of the Union shall be permitted time as necessary during scheduled working hours to attend meetings with the Company. Representatives released for these purposes shall be paid for time spent in attending meetings with the Company to the extent that time spent at these meetings is during their regularly scheduled working hours, at their regular basic straight time rate,

exclusive of all premiums and differentials.

> The Company will permit the Union President and/or Secretary time off to an aggregate of four (4) hours each day for the purpose of conducting union business during normal working hours on Company property, and will pay the time at regular basic straight time rate, exclusive of all premiums and differentials.[2]

Pursuant to this agreement, both the president and secretary of the Union were paid for an eight-hour day, notwithstanding that some of these employees' time presumably was spent on other than "company" business. The officers were not paid for time spent in excess of an eight-hour day, nor were they compensated for time spent away from company premises.

In September of 1982, BASF informed LaMountain and Scales that, notwithstanding the bargained for no-docking provision, BASF no longer would make payments to union officers for time spent on union business, with the limited exception of payments made for actual time spent meeting with management. The notice was given pursuant to BASF's conclusion that payments to union officials for time spent on union business, other than at actual meetings with management, are proscribed by the provisions of 29 U.S.C. § 186(a).

Based on this refusal by BASF to honor the no-docking provision, as well as certain other antagonistic actions taken by BASF, the Union filed unfair labor practice charges with the National Labor Relations Board ("NLRB"). On February 15, 1984, an administrative law judge ("ALJ") found that BASF's repudiation of the no-docking agreement constituted an unfair labor practice within the meaning of 29 U.S.C. § 158(a)(1), (5).[3] The ALJ found specifical-

---

2. As will be discussed below, BASF concedes that payments made for time actually spent in meetings with management are lawful. It is only the latter portion of the quoted language from the collective bargaining agreement with which plaintiff takes issue.

3. 29 U.S.C. § 158 provides in part:
   (a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

. . . .

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

ly that he was without jurisdiction to determine whether BASF's repudiation of the agreement was in violation of § 302. *See* ALJ decision, Appendix A to Defendant's Memorandum of Law in Opposition.

### III

■ Section 302(a) contains a broad prohibition against payments by an employer or its agents to, among others, a representative of its employees. Indeed, § 302(d)[4] makes a willful violation of the proscriptive provisions of § 302(a) a criminal violation. There is no question concerning the laudable purpose underlying § 302 of preventing even subtle forms of assistance to union representatives which present a risk of improperly influencing the representatives or of compromising their independent judgment. Clearly, then, § 302 is designed to prevent improper interference by an employer with the representatives of its employees, and is not designed to prevent the necessary cooperation between management and labor essential to the furtherance of their joint interests. It is apparent to this Court that the provisions of the collective bargaining agreement between these parties allowing for the Union's officials to be paid for time spent on union business during working hours is a cooperative effort representing the product of arms-length bargaining and does not present the type of opportunity for employer interference in union affairs which § 302 is designed to prevent. More specifically, this Court finds that the payments in question fall within the exception found in § 302(c)(1),[5] allowing for payments made

"by reason of" one's service as an employee.

■ Two cases addressing the legality of similar no-docking provisions have been discussed at length by the parties herein. The first of these cases, *United States v. Motzell,* 199 F.Supp. 192 (D.N.J.1961), involved a criminal prosecution under § 302. The defendant in *Motzell,* while a union representative, accepted employment with two employers as a master mechanic. His services to each employer essentially involved assuring that a sufficient number of union employees would be available when needed by the two employers. Motzell's employment with each employer constituted a separate count of the indictment. With respect to count one of the indictment, the *Motzell* court concluded that payments made to defendant by employer number one fell within the exceptions in § 302(c) to the prohibitions of § 302(a). In dealing with count two of the indictment, with which we need not be concerned here, the court concluded that Motzell's actions had not been willful and, therefore, could not give rise to criminal responsibility.[6]

Arguably, *Motzell* can be distinguished from the case at bar. There, the conduct for which defendant was compensated fell more comfortably within the "by reason of his services as an employee" exception found in § 302(c), since Motzell was paid to ensure an adequate labor supply at each jobsite. By contrast, in the present case, union officials have been compensated for time spent attending to purely intra-union affairs. This Court concludes, however,

---

**4.** 29 U.S.C. § 186(d) provides:
  (d) Any person who willfully violates any of the provisions of this section shall, upon conviction thereof, be guilty of a misdemeanor and be subject to a fine of not more than $10,000 or to imprisonment for not more than one year, or both.

**5.** 29 U.S.C. § 186(c)(1) provides:
  (c) Exceptions
    The provisions of this section shall not be applicable (1) in respect to any money or other thing of value payable by an employer to any of his employees whose established duties include acting openly for such employer in matters of labor relations or personnel

administration or to any representative of his employees, or to any officer or employee of a labor organization, who is also an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer....

**6.** Clearly, conduct which does not give rise to criminal liability under § 302 nonetheless can fall within the civil prohibitions in the statute. *Jackson Purchase Rural Electric Cooperative Association v. Local Union 816, Int'l Brotherhood of Electrical Workers,* 646 F.2d 264, 266 (6th Cir.1981).

that any such distinction is insufficient to reject the broader policy considerations enunciated in *Motzell.*

In distinguishing the cases relied upon by the Government, the *Motzell* court noted that "[n]one of the cases have a feature of employment, but only occasional payments or loans or doing of other things of value *usually in a surreptitious fashion in an attempt to hide or put under a different cloak or label the true nature of the payment made.*" *United States v. Motzell,* 199 F.Supp. at 196 (emphasis supplied) (citations omitted). The court also relied upon the following language in *United States v. Ryan,* 232 F.2d 481, 483 (2d Cir.1956), quoted in *United States v. Alaimo,* 191 F.Supp. 625 (M.D.Pa.1961):

> The chief, if not only, purpose of the section was to put a stop to practices that, if unchecked, might impair the impartiality of union "representatives," to prevent employers from tampering with the loyalty of union officials, and disloyal union officials from levying tribute upon employers.

*United States v. Alaimo,* 191 F.Supp. at 627 (citations omitted). This Court agrees with *Motzell*'s assessment of the purposes underlying § 302 and finds inescapable the conclusion that those purposes would not be served by finding unlawful the instant no-docking provisions. As in *Motzell,* defendant's actions here are "legitimate labor practices, as a result of open dealings between management and labor, and were not designed by the Union as an intimidation or extortion of the company nor an attempt on the part of the company to bribe the union official[s] here involved ... or to gain control over the Union." *United States v. Motzell,* 199 F.Supp. at 198.

Also relied upon by defendant Union is the closely analogous case of *Employee's Independent Union v. Wyman Gordon Co.,* 314 F.Supp. 458 (N.D.Ill.1970). The facts in *Wyman Gordon* were set out as follows:

> Prior to October, 1967, the Company and the Union had agreed on a plan for compensating Union members of the Board of Adjustment for the period when the Board was meeting to conduct the Fourth Step grievance procedure. The meetings were held at least once a month at 10:00 a.m. in the Company conference room. On the day of the Fourth Step grievance meeting the Union members of the Board of Adjustment did not work their regular shift whether it was the first, second or third shift. As compensation for the day of the meeting they received six hours of pay from the Company and they received two hours of pay from the Union. If the meeting was of short duration, however, then the Company and the Union each provided four hours of pay. The length of the meetings varied so that on occasion the duration of the meeting was in excess of the number of hours of pay paid by the Company and on occasion the duration was less than the number of hours of pay which the Company provided.
>
> In October, 1967, the Company changed the aforementioned procedure and instituted a scheme whereby the Union members of the Board of Adjustment received pay only for those hours which they were actually in attendance at the Fourth Step meetings. The Union objected to the Company's unilateral change in the compensation method and it brought the issue to arbitration. The arbitrator found that the Company was bound by the prior agreement and that it did not have the right under the contract to make the unilateral change.
>
> The Company has refused to abide by the arbitration decision and the Union has come to this court seeking enforcement of the award. The only issue before this court is the legality of the method of compensation that was in practice prior to October, 1967. If the method is legal than [sic] the Company must obey the decision of the arbitrator.

*Employers' Independent Union v. Wyman Gordon Co.,* 314 F.Supp. at 459. Having framed the issue in these terms, the court proceeded to conclude that the method of compensation agreed upon was

consistent with the provisions of § 302. Crucial to the court's determination was its opinion "that Congress did not intend to cast the ominous shadow of criminal sanctions over the innocuous agreements that unions and companies must engage in regularly in order to work out minor labor relations and production problems," *id.* at 461, and its conclusion that "[t]he plan as it existed in practice ... had almost no potential for corrupting the parties to the collective bargaining process." *Id.* Again, the policy considerations underlying the *Wyman Gordon* court's determination impel the conclusion here that the no-docking provisions at issue are consonant with the mandates of § 302.

Plaintiff places great reliance on the Second Circuit Court of Appeals' decisions in *International Longshoremen's Association v. Seatrain Lines, Inc.*, 326 F.2d 916 (2d Cir.1964) and *Moglia v. Geoghegan*, 403 F.2d 110 (2d Cir.1968). This Court concludes, however, that neither of those decisions warrants a finding that the no-docking provision entered into between the parties to the instant action is prohibited by § 302. Both *Seatrain Lines* and *Moglia* were concerned with payments by an employer to a trust fund on behalf of its employees. Such payments clearly are permissible only when they are made in compliance with the specific exception in § 302(c)(5) to the general prohibition in § 302(a). In each of the cases referred to, notwithstanding the provisions of § 302(c)(5)(B), there had been no written agreement between the employer and the trust fund providing the "detailed basis upon which such payments [were] to be made." In the face of so specific an exception which clearly was determinative of the legality of the payments made to each of the respective trust funds, and there being no question that the payments in question did not comply with the terms of the relevant exception, neither the *Seatrain Lines* court nor the *Moglia* court had any alternative but to find that the payments had been made unlawfully.

The propositions which plaintiff culls from each of these cases are that "(a) Section 302 prohibits all payments to union officials, unless they are express statutory exceptions, and (b) bribery or extortion are not the only violations of Section 302." Plaintiff's Reply Memorandum at 2. With this proposition the Court need not take issue, *see United States v. Ricciardi*, 357 F.2d 91, 99 (2d Cir.), *cert. denied*, 384 U.S. 942, 86 S.Ct. 1464, 16 L.Ed.2d 840 (1966); *International Longshoremen's Association v. Waterfront Commission of New York Harbor*, 495 F.Supp. 1101, 1118 (S.D. N.Y.1980), *aff'd in part, rev'd in part*, 642 F.2d 666 (2d Cir.) *cert. denied*, 454 U.S. 966, 102 S.Ct. 509, 70 L.Ed.2d 383 (1981). However, particularly in light of the *Motzell* and *Wyman Gordon* decisions, this Court finds that the payments made by plaintiff to defendant Union's officials pursuant to the collective bargaining agreement's no-docking provision fall within the exception in § 302(c)(1) to the prohibition of § 302(a). *Cf. Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority*, —— U.S. ——, —— n. 17, 104 S.Ct. 439, 449 n. 17, 78 L.Ed.2d 195 (1983) ("unions may presumably negotiate for [travel expenses and per diem allowances of union negotiators] in collective bargaining [in the public sector] as they do in the private sector").

### IV

For the reasons provided above, plaintiff's motion for summary judgment, Fed. R.Civ.P. 56(a), is denied.

It is so Ordered.