# GIBBS & STERRETT MANUFACTURING COMPANY v. BRUCKER.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF WISCONSIN.

Submitted April 25th, 1884.—Decided May 5th, 1884.

*Contract—Lord's Day.*

An agreement signed by the maker on Sunday, but not delivered to the other party on that day of the week, is no violation of a statute making it a penal offence to do business on the first day of the week.

A contract made on Sunday with an agent of the other party without his knowledge, the agent having no authority to bind his principal, and ratified by the principal on another day of the week and then exchanged, is not void as a violation of a statute making it penal to do business on Sunday.

The facts making the case are fully stated in the opinion of the court.

*Mr. William P. Lynde* for plaintiff in error.

*Mr. Edward S. Bragg* for defendant in error.

Mr. Justice Woods delivered the opinion of the court.

This was an action at law brought by the Gibbs & Sterrett Manufacturing Company, the plaintiff in error, against Peter Brucker, the defendant in error, and Pirmin Kœpfer, upon a cause of action which was stated in the complaint substantially as follows: On January 23d, 1878, the plaintiff, as party of the first part, made an agreement in writing with James Gibson, John Wirtz, and Peter Fox, as parties of the second part, by which the latter were appointed agents for the former to sell, within certain designated territory, during the season of 1877, the reapers and mowers manufactured by the plaintiff. In consideration of such appointment, the parties of the second part agreed to sell the reapers and mowers within the designated territory and to account for the proceeds of the sales to the plaintiff. The contract bore date January 11th, 1878. After the signatures of Gibson, Wirtz, and Fox, the following contract of guaranty was appended:

"For value received we hereby guarantee the fulfilment of the contract on the part of James Gibson, John Wirtz, and Peter Fox, and hereby join them in each and every obligation therein contained."

This guaranty also bore date January 11th, 1878, and was signed by Pirmin Kœpfer, Jacob Steffes and Peter Brucker. The contract and guaranty were negotiated by one Matteson, a special agent of the plaintiff for that purpose, but who had no power to close or conclude the same. After the execution and delivery of the contract and guaranty, and between that time and September 1st, 1878, the plaintiff delivered to Gibson, Wirtz, and Fox, reapers, mowers, &c., of the value of $7,379.10, and of that sum they failed to account for or pay over to the plaintiff $4,664.49, although demanded of them by the plaintiff, and on September 15th, 1878, the plaintiff gave notice thereof to Kœpfer and Brucker, Steffes having previously died, and demanded payment from them of the sum so due the plain-

tiff, which they refused to pay. The demand of the complaint was for judgment against Kœpfer and Brucker for $4,664.49, with interest from December 4th, 1879.

Kœpfer made no defence. Brucker filed an answer, in which he alleged, by way of defence, that he signed the guaranty, and, so far as he was connected therewith, delivered the same upon the day of the week commonly called Sunday. Upon the issue raised on this answer, the case was tried by the court, which made special findings of fact substantially as follows:

The plaintiff was a manufacturing corporation of the State of Pennsylvania, with its home office in that State, and having a branch or general agency in the city of Chicago, in the State of Illinois. During and after the month of January, 1878, Messrs. Hoag & Conklin, of Waterloo, in the State of Wisconsin, were the agents of the plaintiff for that State for the purpose of making sales of the manufactures of the plaintiff therein through sub-agents, to be appointed in the following manner: Hoag & Conklin were to canvass the State of Wisconsin for the purpose of selecting good and responsible men to become agents, and were to fill out in duplicate the plaintiff's printed form of contract, and cause the same to be signed by the agents selected, and by their sureties, and immediately thereafter to forward such duplicates to the plaintiff at its western branch, at Chicago, for its approval and signature. Hoag & Conklin had no power or authority to sign or close any such contract on behalf of the plaintiff.

From January 10th until January 25th, 1878, and thereafter, one M. V. Matteson was an employé and agent of Hoag & Conklin, for the purpose of carrying out the said contract on their part, and had and exercised no other or greater or different powers in that regard than Hoag & Conklin.

Hoag & Conklin were to be paid by the plaintiff, by certain commissions upon the amount of machinery sold, and Matteson was to be paid by Hoag & Conklin, by commissions upon the amount of machinery sold through agencies established by him.

On January 11th, 1878, which was Friday, the agency con-

tract referred to in the complaint was, at the instance of Matteson, signed by Gibson, Wirtz and Fox, and the guaranty contract on which the suit was brought was on the same day signed by Kœpfer. On Sunday, January 13th, the guaranty contract was signed by Steffes and Brucker, and on the same day delivered to Matteson.

At this time Wirtz, Gibson and Fox knew, but Brucker did not, that Matteson had no authority to sign or close the contract on behalf of the plaintiff, but that it must be sent to the plaintiff at Chicago to be accepted and signed by it. Brucker had no knowledge of the powers of Matteson, and made no inquiry concerning them.

On Monday, January 14th, Matteson sent duplicates of the contract and guaranty so signed by mail to the plaintiff at Chicago for acceptance and signature, and the same were accepted and signed by the plaintiff on Wednesday, January 23d, and on the same day one of the duplicates was returned by mail to Gibson, Wirtz and Fox, but no communication took place between the plaintiff and Brucker in reference thereto.

During the spring and summer of 1878, the plaintiff delivered to Wirtz, Gibson, and Fox, upon the contract, reapers and mowers, on which there remained due to plaintiff the sum of $3,336.25, with interest thereon from March 14th, 1881, for which defendant Brucker was liable, provided the guaranty contract was valid as against him.

Neither the plaintiff, nor any officer or agent thereof, excepting Matteson, ever had notice or knowledge, until after the signing of contracts in Chicago, and until after the delivery of all of the reapers and mowers to Gibson, Wirtz, and Fox, that the instrument of guaranty was signed and delivered by defendant Brucker on Sunday.

Upon these facts the judges of the court were divided in opinion upon the question whether the contract of guaranty and suretyship, upon which this suit was brought, was void and invalid under the statutes of Wisconsin, because the same was so signed and delivered by the defendant Brucker upon Sunday; and the presiding judge being of opinion that the contract was invalid, for the reason stated, judgment in favor of the defend-

ant was rendered in accordance with his opinion, and thereupon the plaintiff sued out this writ of error.

The law of Wisconsin referred to in the certificate of division of opinion is as follows:

" Any person who shall keep open his shop, warehouse or work-house, or shall do any manner of labor, business or work, except only works of necessity and charity, or be present at any dancing or public diversion, show or entertainment, or take part in any sport, game or play, on the first day of the week, shall be punished by fine, not exceeding ten dollars; and such day shall be under-stood to include the time between the midnight preceding and the midnight following the said day, and no civil process shall be served or executed on said day." Revised Statutes of Wisconsin of 1878, section 4595.

The ground upon which courts have refused to maintain actions on contracts made in contravention of statutes for the observance of the Lord's day is the elementary principle that one who has himself participated in a violation of law cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction. *Cranson* v. *Goss*, 107 Mass. 439 ; *Holman* v. *Johnson*, Cowp. 341.

If, therefore, the evidence shows a good cause of action without any participation of the plaintiff in an illegal trans-action, he may recover, the law simply refusing its aid to either party in giving effect to an illegal transaction in which he has taken part. *Tuckerman* v. *Hinckley*, 9 Allen, 452 ; *Stackpole* v. *Symonds*, 3 Foster (23 N. H.) 229 ; *Bloxsome* v. *Williams*, 3 B. & C. 232 ; *Roys* v. *Johnson*, 7 Gray, 162.

Applying these principles, it is clear there was no obstacle to a recovery by the plaintiff in this case. The plaintiff itself took no part in any violation of the law of Wisconsin forbid-ding the doing of labor, business, or work on Sunday, unless it was bound by the acts and knowledge of Matteson in regard to the signing of the contract by Brucker, the defendant. But it was not so bound.

The complaint alleged that Matteson was the special agent of the plaintiff to negotiate the agreement set out therein, but

that he had no power to close or conclude the same. This averment is fully sustained by the findings, by which it appears that neither Hoag & Conklin nor Matteson had power to sign, accept, or close any such contract on behalf of the plaintiff. The knowledge, therefore, of Matteson, that the defendant Brucker signed the contract on Sunday, and his acceptance of the manual delivery of the contract on the same day, was not within his agency, and was not the act of, and was not binding on, the plaintiff. So far, therefore, as there was any violation of the law of Wisconsin forbidding the transaction of business on Sunday, it was the act of Brucker alone, in which the plaintiff took no part and of which it had no knowledge. The fact, therefore, that the contract was signed by the defendant and handed to Matteson on Sunday is, upon the authorities cited, no obstacle to a recovery.

There is another ground on which the case of the plaintiff may be placed.

In order to make good the defence set up in the answer, it is necessary to prove not only that the defendant signed his name to the contract on Sunday, but that he delivered it on Sunday. The mere signing of a contract on Sunday, which is not delivered on that day, does not avoid the contract. *Adams* v. *Gay,* 19 Vt. 358; *Goss* v. *Whitney,* 24 Vt. 187; *Saltmarsh* v. *Tuthill,* 13 Ala. 390, 406; *Flanagan* v. *Meyer,* 41 Ala. 132; *Commonwealth* v. *Kendig,* 2 Penn. St. 448; *Hill* v. *Dunham,* 7 Gray, 543; *Hall* v. *Tucker,* 37 Mich. 590; *Hilton* v. *Houghton,* 35 Me. 143.

The question, therefore, arises, was the contract which was signed by Brucker on Sunday delivered by him on Sunday? The delivery on Sunday relied on by defendant to avoid the contract, was the alleged delivery to Matteson. But we have seen that, according to the findings of the Circuit Court, Matteson was not the agent of the plaintiff for that purpose, and could not accept a delivery of the contract so as to bind the parties. In other words, the handing to him by the defendant of the contract was not a delivery in the legal sense, and was no more effectual to bind the plaintiff or the defendant than if the contract had been handed to an indifferent third person.

The fact was that the delivery to Matteson was virtually the delivery to a messenger to transmit the contract to the other party for its approval or disapproval. Until the contract was approved and executed by the plaintiff, the defendant had his *locus penitentiæ*, and could have withdrawn his assent to the contract. In a word, there was no contract until the agreement had been assented to by both parties, and this, according to the findings, was on Wednesday, January 23, when the contract was approved and signed by the plaintiff.

The fact that the defendant did not know, when he handed the contract to Matteson, what the powers of Matteson were, or that the contract would have to be sent to the plaintiff for its acceptance and signature, can have no influence on the result. Even if it was the purpose of the defendant to bind himself by a delivery of the contract to Matteson, such delivery, being to an unauthorized person, would not bind the plaintiff, and if the plaintiff was not bound neither was the defendant.

The defence, therefore, resolves itself into this, that the defendant, without the concurrence or knowledge of the plaintiff, signed on Sunday a paper writing, which bore date of a week day, and which, to become a contract between the parties, required the assent and signature of the plaintiff, which was given on a week day. This, according to the authorities, does not avoid the contract.

We have examined all the cases decided by the Supreme Court of Wisconsin which have been cited by counsel, and find nothing in them contrary to the views we have expressed. *Moore* v. *Kendall*, 2 Pin. 99; *Hill* v. *Sherwood*, 3 Wis. 343; *Melchoir* v. *McCarty*, 31 Wis. 252; *Knox* v. *Clifford*, 38 Wis. 651; *Troewert* v. *Decker*, 51 Wis. 46; *De Forthe* v. *The Wisconsin & Minnesota Railroad Company*, 52 Wis. 320. The case of *Knox* v. *Clifford*, *ubi supra*, sustains the conclusion we have reached, though on a different ground. In that case it was held that he who makes and puts in circulation a promissory note bearing date on a week day, is estopped as against an innocent holder from showing that it was executed on Sunday.

We base our decision, however, on the grounds we have indicated, first, because it does not appear that the plaintiff had any part in executing the contract in violation of the law of Wisconsin forbidding the transaction of business on Sunday; and, second, because the contract, though signed by the defendant on Sunday, was not delivered by him, and did not take effect on that day.

We are of opinion that the Circuit Court erred in rendering judgment for the defendant upon the findings of fact.

*The judgment is reversed, and the cause remanded, with directions to grant a new trial.*