**PHARMACEUTICAL SALES AND CONSULTING CORPORATION, Plaintiff/Counterclaim-Defendant,**

v.

**J.W.S. DELAVAU CO., INC., Defendant/Counterclaim-Plaintiff,**

and

**Accucorp Packaging, Inc., Defendant,**

v.

**Pharmaceutical Sales and Consulting Corporation, John S. Sadlon and Laura Micelli, Counterclaim–Defendants.**

No. CIV.A.95–5961(MLC).

United States District Court, D. New Jersey.

July 21, 2000.

Robert Montecallo Biagiotti, Marino & Montecallo, Hackensack, NJ, for Plaintiff.

Richard S. Hyland, Montgomery, McCracken, Walker & Rhoads, LLP, Cherry Hill, NJ, for Defendants J.W.S.

Delavau Co., Inc. and Accucorp Packaging, Inc.

Jack A. Traina, Traina & Traina, Wood-Ridge, NJ, for Counterclaim-defendant John S. Sadlon.

## AMENDED MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court on an appeal by defendant J.W.S. Delavau Co. ("Delavau") from an Order entered by the Magistrate Judge on April 4, 2000, denying Delavau's motion for leave to file a third amended answer to add a public policy defense. For the reasons set forth in this Memorandum and Order, we will reverse and permit the pleading to be filed.

## BACKGROUND

The background facts have been set forth in this Court's Memorandum Opinions dated May 13, 1999 and July 9, 1999,[1] and in the interest of brevity are incorporated by reference herein. Briefly, plaintiff Pharmaceutical Sales and Consulting Corporation ("PSCC") and Delavau entered into a Sales, Consulting and Confidential Disclosure Agreement ("the Agreement"), which was executed by the parties on July 1, 1992. *Pharmaceutical Sales*, 59 F.Supp.2d at 409. The Agreement provided that Delavau was to pay PSCC a commission for sales PSCC brought to Delavau from Lederle Laboratories, Inc. ("Lederle"). *Id.* The Agreement was signed by John Sadlon ("Sadlon"), as president of PSCC, and on its behalf. *Id.* at 409–10. PSCC brought this action for breach of contract, alleging that defendant Delavau failed to pay commissions due and owing to PSCC pursuant to the Agreement. *Id.*

Delavau had previously moved for leave to file a second amended answer to state counterclaims against two individuals,

namely Sadlon and Laura Micelli ("Micelli"), as counterclaim defendants in this suit. *See id.* at 410. This Court treated Delavau's prior motion as a motion to amend the Final Pretrial Order filed on October 1, 1997 and granted it. *Id.* at 411, 416–17. Delavau filed its second amended answer on July 9, 1999.

On September 27, 1999, the Magistrate Judge ordered discovery limited to the relationship between Sadlon and Micelli, and their relationship with PSCC. (*See* Order filed 9–27–99.) The order required discovery to be completed by November 30, 1999. (*Id.*)

On January 3, 2000, PSCC moved to amend its complaint, alleging that Delavau had fraudulently transferred assets to Accucorp., Inc. ("Accucorp"). On February 23, 2000, the Magistrate Judge entered an Order granting PSCC leave to amend its complaint to add Accucorp as a defendant and to assert a cause of action for violation of the Uniform Fraudulent Transfer Act, but stayed further discovery on this claim, pending final judgment. (*See* Order filed 2–23–00.)

At a pretrial conference on March 7, 2000, the Magistrate Judge granted Delavau's request to file a motion for leave to amend its answer to add an affirmative defense of public policy. (*See* Supplemental Certif. of Richard S. Hyland, Esq. in Supp. of Appeal ¶ 3.) Delavau's request was premised on newly-acquired evidence suggesting that PSCC and Richard T. DiBenedetto, Sr. ("DiBenedetto"), Lederle's director of quality assurance, engaged in a scheme of commercial bribery in violation of New Jersey's Commercial Bribery Statute (the "Bribery Statute"), N.J. Stat. Ann. § 2C:21–10. (Delavau's Br. in Supp. of Appeal dated 4–17–00 at 4–5.) Delavau alleges that it learned for the first time on August 26, 1999, that Micelli was married to DiBenedetto's son, Richard T. DiBene-

---

**1.** These opinions were reported as *Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 59 F.Supp.2d 398 (D.N.J.1999), and *Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 59 F.Supp.2d 408 (D.N.J.1999), respectively.

detto, Jr., and that DiBenedetto was responsible for approving Delavau as an outside contractor. (*See* Delavau's Br. in Supp. of Appeal at 4.) Delavau alleges that DiBenedetto violated a duty of fidelity owed to Lederle by agreeing to steer Lederle's business to Delavau. (*See generally* Def.'s Br. in Supp. of Appeal at 5–9, 13–19.) Delavau also asserts that, in exchange, PSCC agreed to pay one-half of the commissions earned by PSCC on such sales to Micelli, DiBenedetto's daughter-in-law, by making her a partner in PSCC without any consideration. (*Id.*)

The Magistrate Judge heard oral argument on Delavau's motion on April 3, 2000, and ruled that Delavau's proposed amendment would be futile because Delavau does not allege that DiBenedetto received a direct benefit, which she found to be an element of the Bribery Statute. (*See* Tr. of 4–3–00 Hr'g at 14–15.) In so ruling, the Magistrate Judge stated:

> Essentially, ... I find that the motion itself at this point would be futile, because [the facts alleged do not amount to a violation] of the Commercial Bribery Statute to raise a public policy defense. [One, t]here is no indication at all that Mr. DeBennedetto, Sr. (sic) received any benefit other than a psychological one perhaps that his children might benefit in some way from the commission that Delavau was going to be paying.... [Second,] I did not find anything in the case law that would extend the kind of benefit you're suggesting to that statute.

(*Id.*) The Magistrate Judge's ruling was memorialized in an Order filed on April 4, 2000. Delavau now appeals that order.

## DISCUSSION

■ A district court, in reviewing a magistrate judge's order on a non-dispositive motion, may modify or vacate the order only if the ruling was "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(a); Loc. R. 72.1(c)(1); *see Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1113 & n. 5 (3d Cir.

1986). "A finding is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.,* 131 F.R.D. 63, 65 (D.N.J.1990) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law. *Gunter v. Ridgewood Energy Corp.,* 32 F.Supp.2d 162, 164 (D.N.J.1998).

■ Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Among the reasons for denying leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility. *In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1434 (3d Cir.1997).

■ A determination as to futility does not require a conclusive determination on the merits of a claim or defense; rather, the futility of an amendment may only serve as a basis for denial of leave to amend when the proposed amendment is frivolous or advances a claim that is legally insufficient on its face. *Miller v. Beneficial Management Corp.,* 844 F.Supp. 990, 1001 (D.N.J.1993) (quoting *Harrison Beverage Co. v. Dribeck Importers, Inc.,* 133 F.R.D. 463, 468 (D.N.J.1990)). Moreover, given the liberal standard applied to the amendment of pleadings, courts place a heavy burden on opponents who wish to declare a proposed amendment futile. *Id.*

The Third Circuit has stated that "the trial court may properly deny leave when the amendment would not withstand a motion to dismiss [under Fed.R.Civ.P. 12(b)(6)]." *Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir.1983); *see Jablonski v. Pan Am. World Airways,* 863 F.2d 289, 292 (3d Cir.1988) (same); *accord Bailey v. Sullivan,* 885 F.2d 52, 59 (3d Cir.1989) ("[N]o purpose would be served by allowing [an] amendment to the com-

plaint to add a challenge which would be dismissed.").

▮ Assertions that amendments to answers are futile are also reviewed under the "motion to dismiss" standard. *See, e.g., Miller,* 844 F.Supp. at 1001; *Harrison Beverage,* 133 F.R.D. at 468. Under this standard, the court must accept as true the allegations in the defendant's proposed affirmative defenses and construe those allegations in the light most favorable to the defendant. *Miller,* 844 F.Supp. at 1001 (quoting *Fireman's Fund Insurance Co. v. Krohn,* No. 91 CIV. 3546, 1993 WL 299268 at *4 (S.D.N.Y. Aug.3, 1993)). Moreover, in making its determination as to an amendment's futility, the court looks only to the pleadings. *Id.; see also Kulwicki v. Dawson,* 969 F.2d 1454, 1462 (3d Cir.1992) ("On review of a motion to dismiss for failure to state a claim, we look only to the complaint to see whether there is any set of facts plaintiff can prove that would support [his or her claim]. All allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.").

The Magistrate Judge denied Delavau leave to amend its answer, finding that Delavau's proposed amendment would be futile. Delavau argues that amendment would not be futile because the alleged improper conduct of DiBenedetto violated the Bribery Statute. (*See generally* Def.'s Br. in Supp. of Appeal at 5–9.) The Magistrate Judge ruled that Delavau's proposed amendment would be futile because Delavau does not allege that DiBenedetto received a direct benefit. (*See* Tr. of 4–3–00 Hr'g at 14–15.) Delavau argues that the Magistrate Judge's ruling was contrary to law because the Magistrate Judge misinterpreted the Bribery Statute. (*See* Delavau's Br. in Supp. of Appeal at 13.) The Bribery Statute provides, in relevant part,

a. A person commits a crime if he solicits, accepts or agrees to accept any benefit as consideration for knowingly

violating or agreeing to violate a duty of fidelity to which he is subject as:

(1) An Agent, partner or employee; [or]

\* \* \* \* \* \*

(4) An officer, director, manager, or other participant in the direction of the affairs of an unincorporated association;

\* \* \* \* \* \*

e. A person commits a crime if he confers, or offers or agrees to confer, any benefit the acceptance of which would be criminal under this section.

N.J. Stat. Ann. § 2C:21–10. Delavau argues that the Magistrate Judge construed the Bribery Statute "fairly strictly" when a broader interpretation of the statute was warranted. (*See* Delavau's Br. in Supp. of Appeal at 9.) Specifically, Delavau argues that the Bribery Statute should be read in conjunction with N.J. Stat. Ann. § 2C:21–8.1, which states in relevant part:

a. As used in Chapter 21, unless a different meaning is plainly required:

"Benefit derived" means the loss resulting from the offense or any gain or advantage to the actor, or coconspirators, or any person in whom the actor is interested, whichever is greater, whether the loss, gain or advantage takes the form of money, property commercial interests or anything else the primary significance of which is economic gain.

Delavau argues that even though the Bribery Statute dropped the term "benefit derived" when it was amended in 1986, the purpose of the amendment was to impose the same penalty for offering a bribe as the penalty for accepting a bribe and not to alter the circumstances under which a person would be found liable for accepting or offering a bribe. *See* N.J. Stat. Ann. § 2C:21–10 note (Senate Judiciary Comm. Statement, Senate No. 1098—L1986, c. 129).

▮ In New Jersey, when a defense arises from a penal statute, as does the

defense of commercial bribery, that statute should be strictly construed. *See Jaclyn, Inc. v. Edison Bros. Stores, Inc.,* 406 A.2d 474, 485, 170 N.J.Super. 334 (Law Div. 1979) (strictly construing defense based upon New Jersey's commercial bribery statute). Although the Court has not found any cases discussing the interplay between the Bribery Statute and N.J. Stat. Ann. § 2C:21–8.1, we conclude that the Bribery Statute should be read in conjunction with N.J. Stat. Ann. § 2C:21–8.1. The amendment to the Bribery Statute in 1986, which deleted the reference to the term "benefit derived," was not intended to alter the circumstances under which a person would be found liable under the statute but rather was clearly intended to equate the penalties for offering and accepting a bribe. *See* N.J. Stat. Ann. § 2C:21–10 note (Senate Judiciary Comm. Statement, Senate No. 1098—L1986, c. 129).

■ If the Bribery Statute is read in conjunction with N.J. Stat. Ann. § 2C:21–8.1, then the facts as alleged by Delavau would clearly survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Massarsky,* 706 F.2d at 125. Under N.J. Stat. Ann. § 2C:21–8.1, the term benefit includes the "gain or advantage to the actor, or coconspirators, or any person in whom the actor is interested." Delavau alleges that Micelli is either a "coconspirator" or a "person in whom the actor is interested." (Delavau's Br. in Supp. of Appeal at 12.) In addition, Delavau alleges that Micelli received the benefit of more than $400,000 in commissions between 1993 and 1995. (Delavau's Br. in Supp. of Appeal at 13.) We conclude that DiBenedetto's failure to obtain a direct benefit from the scheme would not immunize DiBenedetto, Sadlon, and PSCC from the reach of the Bribery Statute. Delavau's public policy defense, therefore, would not be futile.

PSCC and Sadlon argue that even if Delavau's public policy defense would not be futile, Delavau's appeal should be denied because: (1) Delavau lacks standing to assert a public policy defense, (2) Delavau's proposed amendment was untimely and would result in undue prejudice, and (3) Delavau's request should be treated as an application to amend the final pretrial order. (Sadlon's Br. in Opp'n to Appeal dated 5–1–00; PSCC's Br. in Opp'n to Appeal dated 5–1–00.)

Sadlon argues that Delavau lacks standing to assert a public policy defense because it is not the injured party intended to be protected by the Bribery Statute. (Sadlon's Br. in Opp'n to Appeal at 11.) Sadlon's argument is not persuasive. The courts will generally not permit wrongdoers to profit from their wrongs. *See, e.g.,* 6 *Williston on Contracts,* § 12.4 (4th ed.1995); *Gibbs & Sterrett Mfg. Co. v. Brucker,* 111 U.S. 597, 4 S.Ct. 572, 28 L.Ed. 534 (1884); *McConnell v. Commonwealth Pictures Corp.,* 7 N.Y.2d 465, 199 N.Y.S.2d 483, 166 N.E.2d 494 (N.Y.1960).

■ Although the Court is not aware of any cases applying New Jersey law to facts such as this where a defendant has asserted a public policy defense to avoid enforcement of a contract, we believe that New Jersey courts would follow the lead of its sister state, New York, which has confronted this issue in a case with very similar facts. In *McConnell v. Commonwealth Pictures Corp.,* the defendant had agreed in writing that, if plaintiff should succeed in negotiating a contract with a motion picture producer whereby defendant would get the distribution rights for certain motion pictures, defendant would pay plaintiff $10,000 on execution of the contract between the defendant and the producer, and would thereafter pay plaintiff a stated percentage of defendant's gross receipts from distribution of the pictures. 199 N.Y.S.2d 483, 166 N.E.2d at 495, 7 N.Y.2d 465. Plaintiff negotiated the distribution rights for defendant and defendant paid plaintiff the promised $10,000 but later refused to pay him the commissions or to give him an accounting of the profits. *Id.* In defendant's answer to plaintiff's complaint for an accounting, defendant asserted that

plaintiff, without the knowledge of defendant or of the producer, procured the distribution rights by bribing a representative of the producer and that plaintiff agreed to pay and did pay to that representative as a bribe the $10,000 that defendant paid plaintiff. *Id.* at 495–96, 199 N.Y.S.2d 483, 7 N.Y.2d 465. The New York Court of Appeals reversed an order of the trial court to the extent that it dismissed defendant's public policy defenses, holding, "Consistent with public morality and settled public policy, ... a party will be denied recovery even on a contract valid on its face, if it appears that he has resorted to gravely immoral and illegal conduct in accomplishing its performance." *Id.* at 497–98, 199 N.Y.S.2d 483, 7 N.Y.2d 465. In so ruling, the Court of Appeals stated, "our holding is limited to cases in which the illegal performance of a contract originally valid takes the form of commercial bribery or similar conduct and in which the illegality is central to or a dominant part of the plaintiff's whole course of conduct in performance of the contract." *Id.* We believe New Jersey would recognize the same public policies recognized by the New York Court of Appeals in *McConnell.* For these reasons, we hold that Delavau has standing to assert a public policy defense.

PSCC argues that Delavau's motion for leave to amend was properly denied because amendment was untimely and would result in undue prejudice. (PSCC's Br. in Opp'n to Appeal at 8–10.) PSCC asserts that it will be prejudiced by the proposed amendment because two fact witnesses whom Delavau indirectly relies upon to draw inferences of commercial bribery, DiBenedetto and Sal Daleo, died during the course of the litigation and PSCC would have been able to depose these witnesses if Delavau had raised its public policy defense sooner. (*Id.* at 8–9.)

First, the facts giving rise to Delavau's public policy defense did not come to light until very recently. (*See* Tr. of Hr'g at 16; Delavau's Br. in Supp. of

Appeal at 4–5.) Second, PSCC has failed to establish how it is unduly prejudiced by the deaths of DiBenedetto and Sal Daleo. PSCC does not allege that these parties are the only parties with knowledge of facts that would prove or disprove Delavau's public policy defense. Other persons, such as Micelli and DiBenedetto's son, may have knowledge relevant to this issue. In addition, there is no reason to believe that PSCC and Sadlon are prejudiced to a greater extent than Delavau. Finally, a public policy defense cannot be waived. The defense is allowed not for the sake of the defendant, but because it is in the interest of the public and the administration of justice. *See* 6 *Williston on Contracts* § 12:5; *cf. Trautwein v. Bozzo,* 39 N.J.Super. 267, 268, 120 A.2d 788, 789 (App.Div.1956) (holding that trial or appellate court can recognize unclean hands doctrine, *sua sponte,* in interest of justice and public where justified by the circumstances). For these reasons, PSCC's objection based upon undue delay and undue prejudice must fail.

Finally, PSCC argues that Delavau's motion for leave to amend should be treated as a motion for leave to amend the final pretrial order pursuant to Federal Rule of Civil Procedure 16(e). Under Federal Rule of Civil Procedure 16(e), the final pretrial order may be amended "only to prevent manifest injustice." *See Pharmaceutical Sales,* 59 F.Supp.2d at 411.

Even if PSCC were correct, we conclude that granting Delavau leave to amend its answer is necessary to prevent manifest injustice under the facts of this case. First, the Magistrate Judge allowed PSCC to amend its complaint by Order dated February 23, 2000, after it moved for leave pursuant to Federal Rule of Civil Procedure 15(a), rather than Federal Rule of Civil Procedure 16(e). PSCC is judicially estopped from claiming that Delavau is not permitted to do likewise. Second, even if Delavau failed to affirmatively raise the public policy defense, the Court would be free to raise it *sua sponte. See Traut-*

*wein,* 39 N.J.Super. at 268, 120 A.2d at 789. The Court would be so inclined because it would not wish to assist PSCC to carry out an illegal object if the facts alleged by Delavau are true.

For the foregoing reasons, the Court shall grant the appeal by Delavau and shall reverse the Order entered on April 4, 2000.