GUARDIAN TITLE AGENCY, LLC, a Colorado limited liability company, Plaintiff,

v.

MATRIX CAPITAL BANK, a New Mexico corporation, Defendant.

No. CIV.A. 00–D–1748.

United States District Court, D. Colorado.

April 16, 2001.

Douglas Wayne Brown, Brown, Berardini & Dunning, P.C., Denver, CO, for Plaintiff.

Eric Paul Accomazzo, Wendy Elizabeth Weigler, Bloom, Murr & Accomazzo, Denver, CO, for Defendant.

## ORDER

DANIEL, District Judge.

THIS MATTER is before the Court on Defendant's Motion to Dismiss filed October 6, 2000, and Plaintiff's Motion for Leave to File an Amended Complaint pursuant to Fed.R.Civ.P. 15(a), filed March 30, 2001. A hearing on these motions was held on Tuesday, April 10, 2001. As stated on the record, which is incorporated herein by reference, I will GRANT the Motion to Dismiss and DENY AS MOOT the Motion for Leave to File an Amended Complaint.

## BACKGROUND

Steven Sheck obtained a loan brokered by Island Mortgage Network ("Island") to purchase property at 2500 Rim Drive, Broomfield, Colorado (the "Property"), from Bernard and Lori Schneider. Complaint ¶ 2–3. Island acted as a mortgage broker and/or agent for Defendant Matrix Capital Bank. Complaint ¶ 4. Defendant represented to Plaintiff that it had advanced funds to Island for the Sheck loan. Complaint ¶ 4. On June 20, 2000, Defendant contacted Plaintiff and instructed Plaintiff to forward the original executed deed to the Property to Defendant. Complaint ¶ 8. On June 23, 2000, Sheck purchased the Property (the "Closing"). Complaint ¶ 11. Plaintiff conducted the Closing as the escrow agent and "responsible party." Complaint ¶ 12.

At the Closing, Scheck negotiated and executed a Promissory Note dated June 23, 2000, for $206,050. Complaint ¶ 13. Scheck then executed and delivered a Deed of Trust encumbering the Property; the Deed of Trust designated Island as beneficiary Complaint ¶ 14. As consideration for the Deed of Trust, Island tendered a check drawn by National Settlement Services Corp. for $204,441.85 to Plaintiff (the "Check"). Complaint ¶ 15. Plaintiff then tendered the funds to complete the Closing, paying a total of $216,945.66. Complaint ¶ 16. Island subsequently assigned the Deed of Trust to Defendant. Complaint ¶ 17. On June 29, 2000, Wells Fargo Bank dishonored the Check because National Settlement Ser-

vices stopped payment on the check. Complaint ¶ 18. Plaintiff demanded that Island honor the Check; Island has not done this and has filed for Chapter 11 Bankruptcy. Complaint ¶ 19.

Plaintiff alleges that prior to the transaction in question (the "Scheck transaction"), Defendant conducted similar transactions with Island, and that by June 8, 2000, Island was withholding promissory notes from Defendant for transactions where Defendant had provided funds to Island as a mortgage broker and/or agent. Complaint ¶ 5–6. On June 19, 2000, Defendant reported Island to the New York State Banking Commission ("NYSBC") and Federal Bureau of Investigation. Complaint ¶ 7. The NYSBC initiated an investigation of Island. Complaint ¶ 10.

On June 23, 2000, a representative of Defendant traveled to Island's headquarters; shortly thereafter, Island wired $2 million dollars to Defendant. Complaint ¶ 10. Plaintiff believes that this sum may have included a reimbursement of funds Defendant previously advanced in the Scheck transaction. Complaint ¶ 10. Plaintiff further alleges that Defendant failed to inform or notify Plaintiff regarding Island's suspicious/criminal activities. Complaint ¶ 9. Plaintiff states five claims for relief: (1) Replevin of Promissory Note Pursuant to C.R.C.P. 104 and C.R.S. § 4–3–306; (2) Equitable Decree for Reformation of Deed of Trust; (3) Unjust Enrichment; (4) Negligent Misrepresentation; and (5) Breach of Contract/Third Party Beneficiary

Defendant seeks dismissal of Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6) asserting that Plaintiff caused its own damages and is prevented from pursuing its claims because it failed to require "good funds" to complete a real estate closing as required by Colorado law.

## MOTION TO DISMISS

### I. LEGAL STANDARD

"A complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) only 'if the plaintiff can prove no set of facts to support a claim for relief.'" *David v. City and County of Denver,* 101 F.3d 1344, 1352 (10th Cir.1996), *cert. denied,* 522 U.S. 858, 118 S.Ct. 157, 139 L.Ed.2d 102 (1997) (quoting *Jojola v. Chavez,* 55 F.3d 488, 490 (10th Cir.1995)). The court "'must accept all the well-pleaded allegations as true and must construe them in the light most favorable to the plaintiff.'" *Id.* (quoting *Gagan v. Norton,* 35 F.3d 1473, 1474 n. 1 (10th Cir.1994)). An affirmative defense may be raised in a motion to dismiss only if the defense appears plainly on the face of the complaint. *See Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1311 n. 3 (10th Cir.1999).

### II. ANALYSIS

Title insurance agencies that engage in closing and settlement services are governed by C.R.S. § 38–35–125. This statute, known as the "Good Funds" law, provides that: "No person or entity that provides closing and settlement services for a real estate transaction shall disburse funds as a part of such services until those funds have been received and are ... available for immediate withdrawal." C.R.S. § 38–35–125(2). Funds are available for immediate withdrawal if transferred by wire transfer, certified check, cashier's check, teller's check, or any other instrument defined by federal regulation. *See* C.R.S. § 38–35–125(1)(c).

Failure to comply with the Good Funds statute is a deceptive trade practice. *See* C.R.S. § 38–35–125(5). The Colorado Consumer Protection Act not only lists the violation of C.R.S. § 38–35–125 as a deceptive trade practice, but allows enforcement

"by a private cause of action." C.R.S. § 6–1–105(v); D. Minzer and J. Kezer, *Good Funds Law and New Title Insurance Regulations*, 18 Colo. Law. 233, 235 (1989). In addition, failure to comply with the Good Funds statute violates Colorado Insurance Regulation 3–5–1, which provides that "[t]he disbursement of funds prior to the actual delivery of 'GOOD FUNDS' to the closing and settlement services agent" is defined as an "unlawful inducement." *See also* C.R.S. § 10–11–108.

The face of the Complaint in this case reveals that Plaintiff failed to obtain good funds in the Scheck transaction. This is because the check that Plaintiff accepted from Island at the Closing was not "available for immediate withdrawal" as required by the Good Funds statute. At the April 11, 2001, hearing Plaintiff admitted that it did not require "good funds" at the time of the Closing.

█ The Good Funds law was developed as a solution to "the need to insure that the title company or other party responsible for real estate closings has 'good funds' in hand before closing real estate transactions." Minzer & Kezer, *supra* at 233. In the event that the responsible party does not have good funds in hand before closing, the statute helps resolve the situation "without causing undue expense, burden or delay to the consumer or any of the affected industries" by placing the burden of obtaining good funds, and the concomitant risks associated with a failure to obtain good funds, on the responsible party. *Id.* at 236.[1]

**A. Breach of Contract and Unjust Enrichment (Fifth and Third Claims for Relief)**

█ In Colorado, courts generally will not enforce an illegal contract based upon "the elementary principle that one who has himself participated in a violation of law cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction." *Merrill v. Abbott*, 77 B.R. 843, 857 (D.Utah 1987)(quoting *Gibbs & Sterrett Mfg. Co. v. Brucker*, 111 U.S. 597, 601, 4 S.Ct. 572, 28 L.Ed. 534 (1884)), cited by *Sender v. Simon*, 84 F.3d 1299, 1307 (10th Cir.1996). Defendant therefore argues that Plaintiff's claims for breach of contract and unjust enrichment, which seek contractually-based remedies, are barred as a result of Plaintiff's failure to comply with the Good Funds law, and the resulting deceptive trade practice in violation of C.R.S. § 38–35–125(5), and receipt of an unlawful inducement in violation of Colorado Insurance Regulation 3–5–1 and C.R.S. § 10–11–108.

1. The Good Funds law was provoked by a 1987 real estate transaction where loan proceeds checks delivered by a mortgage company named Reliance Equities, Inc. were dishonored. The "chaos created by the failure of Reliance Equities" and the disputes that arose following the transaction, led to the formation of a Colorado House Advisory Committee. *See* D. Minzer and J. Kezer, *Good Funds Law and New Title Insurance Regulations*, 18 Colo. Law. 233, 234 (1989). The Committee's purpose was threefold, "to address: (1) the question of who was to perform and pay for closing and settlement services; (2) kickbacks, rebates, illegal practices and inducements; and (3) what could be done to try to avoid a repeat of the consequences caused by the failure of Reliance Equities without making the system to cumbersome or expensive for consumers." *Id.* Following significant debate, the Good Funds law was passed as the means of resolving the problems considered by the Committee. The Good Funds law was given "teeth by including it within the Colorado Consumer Protection Act, making a violation of [the statute] a deceptive trade practice, and allowing enforcement by the Attorney General's Office or by a private cause of action." *Id.* at 235 (footnotes omitted).

■ Plaintiff argues that the real estate contract at issue in this case was not itself illegal and so the doctrine of illegality does not bar its claims. *See Board of County Commissioners of Pitkin County v. Pfeifer*, 190 Colo. 275, 546 P.2d 946, 949 (1976)("[T]he doctrine of illegality of contracts applies only to the parties to the *illegal contract* who seek to gain some benefit through the use of the courts." (emphasis added)). The 10th Circuit in *Sender*, however, clarified that a bargain may be illegal even where the contract itself is not illegal. "A bargain may be illegal by reason of the wrongful purpose of one or both of the parties making it. This is true even though the performances bargained for are not in themselves illegal and even though in the absence of the illegal purpose the bargain would be valid and enforceable." 84 F.3d at 1307 (quoting *Tri–Q, Inc. v. Sta–Hi Corp.*, 63 Cal.2d 199, 45 Cal.Rptr. 878, 404 P.2d 486, 498 (1965)).

■ The question in this case, therefore, is whether Plaintiff had an "illegal purpose." The "bargain" (real estate transaction), was clearly not illegal per se. Had the parties complied with all applicable statutes, no illegality would have occurred. However, by failing to require "good funds" in violation of C.R.S. § 38–35–125 and C.R.S. § 10–11–108, I find that Plaintiff injected an "illegal purpose" into the situation and the "bargain" became illegal. Plaintiff's claims for breach of contract and unjust enrichment are therefore barred.

B. *Replevin and Reformation (First and Second Claims for Relief)*

■ Plaintiff's claims seeking replevin and reformation are equitable in nature. Colorado law provides that a party seeking an equitable remedy must have "clean hands." This

means that equity refuses to lend its aid in any manner to one seeking its active interposition who has been guilty of fraudulent or unconscionable conduct in the matter with relation to which he seeks relief. Consistently the courts deny affirmative relief for such conduct, even though thereby there are left undisturbed and in ostensible full legal effect relationships which might be set aside but for such conditions. "The rule as to 'clean hands' is one of public policy for the protection of the integrity of the court, not for a defense." The misconduct must relate directly to the transaction concerning which complaint is made or which is the subject matter in litigation.

*Rhine v. Terry*, 111 Colo. 506, 143 P.2d 684, 684–85 (1943). Whether the rule is applicable to a party is a question of fact. *See McCann v. Jackson*, 163 Colo. 163, 429 P.2d 265, 266 (1967).

■ Defendant argues that because Plaintiff committed a deceptive trade practice and accepted an illegal inducement it does not have "clean hands" and is therefore barred from obtaining equitable relief. *See Rolfes v. O'Connor*, 844 P.2d 1330, 1334 (Colo.App.1992). Plaintiff argues that the affirmative defense of unclean hands should not be addressed at the motion to dismiss stage because it requires resolution of factual questions. *See McCann* 429 P.2d at 266.

While it is true that questions of fact are properly resolved following an evidentiary hearing, *id.*, in this case, there is no such factual dispute as to Plaintiff's unclean hands. The undisputed facts and Plaintiff's admission demonstrate that Plaintiff did, in fact, violate Colorado statutes by failing to require good funds at the Closing. As a result, I find that Plaintiff did not have clean hands and is barred from obtaining equitable relief.

C. *Negligent Misrepresentation (Fourth Claim for Relief)*

 "The tort of negligent misrepresentation provides a remedy when money is lost due to misrepresentation in a business transaction. To establish a claim for negligent misrepresentation, it must be shown that the defendant supplied false information to others in a business transaction, and failed to exercise reasonable care or competence in obtaining or communicating information on which other parties justifiably relied." *Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver, N.A.,* 892 P.2d 230, 236 (Colo.1995) (citations omitted).

I find that Plaintiff did not "justifiably rely" on any statements of Defendant because Colorado law required Plaintiff to protect itself (and other parties to the closing) from the risk of dishonored loan proceeds checks by obtaining good funds.[2] Because I find that dismissal of the negligent misrepresentation claim is proper on the issue of justifiable reliance, I need not address Defendant's argument that there is no proximate causation, i.e. that Defendant did not cause Plaintiff's loss because Defendant could not have prevented Island from stopping payment on its check.

Accordingly, it is

ORDERED that Defendant's Motion to Dismiss filed October 6, 2000, is GRANTED. This case is DISMISSED, each party to bear its own costs and attorney's fees. It is

FURTHER ORDERED that Plaintiff's Motion for Leave to File an Amended Complaint pursuant to Fed.R.Civ.P. 15(a), filed March 30, 2001, is DENIED AS MOOT.

---

**2.** Plaintiff failed to respond to Defendant's justifiable reliance argument in its written response to the Motion to Dismiss; I treat this failure to respond as a confession to the Motion.